SAN JACINTO RIVER CONSERVATION AND RECLAMATION DISTRICT
v. GROVER SELLERS, ATTORNEY GENERAL OF TEXAS.

No. A-355. Decided January 24, 1945.
(184 S. W. 2d Series, 920.)

329

*James V. Allred,* of Houston, for petitioner.

*Grover Sellers,* Attorney General, *C. F. Gibson* and *Geo. W. Barcus,,* Assistants Attorney General, for respondent.

MR. JUSTICE ALEXANDER delivered the opinion of the Court.

This is an original mandamus proceeding, brought in this Court by San Jacinto River Conservation and Reclamation District against the Honorable Grover Sellers as Attorney General of the State of Texas to compel the Attorney General to approve the issuance of certain bonds proposed to be issued by said District.

The San Jacinto River Conservation and Reclamation District was created by Special Act of the 45th Legislature, Reg. Sess., 1937, ch. 426, p. 861, which Act was amended by Acts of the 46th Legislature, Reg. Sess., 1939, ch. 10, p. 1097. As its name will indicate it was created as a conservation and reclamation district, a governmental agency, to carry out the purposes of the provisions of the Constitution, Article XVI, Section 59a, to conserve, control, and utilize for beneficial purposes the storm and flood waters of the San Jacinto River. Its powers are fully set out in the Act, and need not be copied here in detail.

The boundaries of the District embrace all of the watershed of the San Jacinto River, except that portion thereof lying within the bounds of Harris County. The Board of Directors of the District has authorized the issuance of the bonds of the District in the sum of $1,800,000.00, payable serially over a period of twenty-five years, the proceeds thereof to be used in carrying out the purposes for which the District was created.

The Directors of the District propose to issue the bonds of the District without a vote of the taxpayers of the District. The bonds proposed to be issued by the District contain the following provisions:

"This bond and the issue of which it is a part are secured solely by and payable from the current revenues received by the district from the operation of its properties and facilities, including the proceeds of the taxes remitted to said District under the provisions of House Bill Number 1079 of the Special Laws of the Forty-Sixth Texas Legislature, Regular Session, and the proceeds of any taxes which may be similarly remitted to said District under the provisions of any law which may hereafter be enacted for such purpose, but not including the proceeds of any taxes levied on the property in said District by the Board of Directors thereof."

The Act creating petitioner was passed in 1937, and is found in General and Special Laws of the 45th Legislature, p. 861. Section 10 of said Act reads as follows:

"SEC. 10. The San Jacinto River Conservation and Reclamation District shall not be authorized to issue bonds nor to incur any form of continuing obligations or indebtedness for purposes of effecting improvements comprehended in the plan of organization and administration of the District, nor incur any indebtedness in the form of continuing charge upon land or properties within the District, unless such proposition shall have been submitted to the qualified property taxpaying voters of the District, or, in appropriate case, such voters of a defined area or political subdivision within the District, and approved by a majority of such electors voting thereon."

In 1939 the Legislature amended the law creating the District, said amendment being found on page 1097 of the Acts of the 46th Legislature, Special Laws. Section 10b, which was added by the Act of 1939, reads as follows:

"Sec. 10b. The District shall have the authority and is thereby authorized to issue its negotiable bonds, secured only by the current revenues of the District in any such amounts as may be authorized by the Directors of such District, for the purpose of making investigations, assembling data and for the purpose of purchasing, acquiring and/or condemning lands, leases, easements, and/or acquittances, right of ways, structures and/or buildings, equipments and/or operation of proper structures, dams, reservoirs, suitable for the control of the recurrent, devastating floods in the valleys of the San Jacinto River, which have, over a long period of years, caused a deplorable loss of

life and property, and the erosion of the soil and depletion of the fertility of the lands of said valley and the watershed served by the San Jacinto River in Texas, and the public highways and structures situated in said watershed; all of which is hereby declared to be a public calamity, and in doing all things necessary in the execution for the purpose for which the District is created and exists. And provided that if and when the Legislature remits the ad valorem tax in the counties for a certain period of years, the Directors may in their discretion if necessary with the approval of the Commissioners' Court of the county in the watershed use part or all of the taxes remitted to said counties for the purpose of paying back to the United States of America or any of its agencies or others the money borrowed by the District for the purpose herein mentioned. As added Acts 1939, 46th Leg., Spec. L., p. 1097, sec. 1.''

■ While Section 10 of the original Act requires approval by the voters of the District in order to authorize the creation of "any indebtedness in the form of a continuing charge upon land or properties within the District," Section 10b of the amended Act authorizes the District to issue bonds "secured only by current revenues of the District in any such amount as may be authorized by the Directors of such District." We hold that under the provisions of the amended Act the directors of the District may issue the bonds of the District secured only by current revenues thereof for any of the purposes named in the Act, without any approval thereof by the voters of the District. Brazos River Conservation and Reclamation District v. McCraw, 126 Texas 506, 91 S. W. (2d) 665; Lower Colorado River Authority v. McCraw, 125 Texas 268, 83 S. W. (2d) 629.

It will be noted that the District proposes to pledge as security for the payment of such bonds the taxes remitted to the District under the provisions of House Bill No. 1079, Special Laws of the 46th Legislature, Regular Session. House Bill No. 1079, above referred to, will be found in the Acts of the 46th Legislature, 1939, chapter 10, p. 984. Section 2 of that Act provides as follows:

"Sec. 2. For a period of ten (10) years or for such portion of such period as may be required, but no longer, and commencing with the fiscal year beginning September 1, 1939, there is hereby donated and granted by the State of Texas to the San Jacinto River Conservation and Reclamation District fifty (50) per cent of all State ad valorem taxes collected for General Revenue purposes upon the property and from persons in the Counties of Montgomery, Walker, San Jacinto, and all that part

of Liberty County embraced in the San Jacinto Watershed, said counties comprising in whole or in part the respective District hereinabove set out, and shall include the rolling stock belonging to railroad companies which shall be ascertained and apportioned as now provided by law. The taxes hereby donated shall be used by the respective District for the purpose of carrying out the powers, duties, and functions conferred upon such District by the Legislature of the State of Texas, provided, however, that the taxes herein donated and granted in the Counties of Walker and San Jacinto shall not apply, nor be allocated or donated in this Act, until the provisions of Senate Bill No. 89, passed at the Regular Session of the Forty-Sixth Legislature, become inoperative; however, in that event taxes accruing in the counties hereinabove named shall apply and be donated as is provided herein for the other counties embraced in this Act, and provided further that all that part of Liberty County embraced in the San Jacinto Watershed shall be embraced in this Act, and all taxes inuring from that portion of such County shall be allocated and donated to the San Jacinto River Conservation and Reclamation District as hereinabove provided."

Other portions of the Act provide that the Tax Assessor-Collector of the counties within the watershed of the District shall pay the State taxes so collected by them to the Treasurer of the District. The Directors of the District are required to file with the State Comptroller an annual statement showing how much funds have been expended by the District.

█ · The Attorney General challenges the constitutionality of the above Act, because the Act by which the donation is attempted to be made makes no finding of the existence of such a public calamity as will justify the donation under the provisions of Article III, Section 51, of our Constitution. It is true that the Act by which the donation was made makes no finding of the existence of public calamity. However, the Legislature in Section 10b of the amended Act of 1939, which outlines the powers of such District, (quoted above) found specifically that "the recurrent devastating floods in the valley of the San Jacinto River" have "over a long period of years caused a deplorable loss of life and property and the erosion of the soil and depletion of the fertility of the lands to said valley and the watershed served by the San Jacinto River in Texas and the public highways and structures situated in said watershed, all of which is hereby declared to be a public calamity." These two Acts, the one making the donation and the other declaring the public calamity, were enacted at the same session of the Legislature. They are therefore in pari materia and are to be

read together, each in the light of the other as though they were embraced in one Act, or were supplementary to each other. Garrett v. Mercantile National Bank at Dallas, 140 Texas 394, 168 S. W. (2d) 636; Southern Pac. Co. v. Sorey, 104 Texas 476, 140 S. W. 334; McGrady v. Terrell, 98 Texas 427, 84 S. W. 641; Houston & T. C. R. Co. v. State, 95 Texas 507, 68 S. W. 777; Myers v. Crenshaw, 134 Texas 500, 137 S. W. (2d) 7; 39 Tex. Jur. 259. The Legislature did therefore declare the existence of a public calamity and the necessity of such aid.

In the cases of Brazos River Conservation and Reclamation District v. McCraw, 126 Texas 506, 91 S. W. (2d) 665, and Harris County Floor Control District v. Mann, 135 Texas 239, 140 S. W. (2d) 1098, this Court held that the existence of facts such as are recited in Section 10b constitutes such a public calamity as will permit the granting of aid to such a district without violating the provisions of Article III, Section 51, of our Constitution. We consider this question now too well settled by the prior decisions of this Court to require further discussion at this time.

■ The last sentence of Section 10b authorizes the District to use the taxes remitted to the counties within the District for the purpose of paying the debts of the District only upon the approval of the Commissioners' Court of such counties. After careful consideration of the matter we are of the opinion that this portion of the Act refers to taxes attempted to be remitted to the counties under the provisions of Acts, 1939, 46th Legislature, p. 668, which Act was held unconstitutional in the case of County of Dallas v. McCombs, 135 Texas 272, 140 S. W. (2d) 1109. This general tax remission Act by which the Legislature attempted to remit to all the counties of the State a portion of the State ad valorem tax was pending before the Legislature at the time Section 10b was enacted into law, and we are of the opinion that the last sentence of Section 10b was added so as to authorize the District to use the funds so remitted to the counties, provided the consent of the Commissioners' Courts was obtained. The taxes donated by Acts, 1939, 46th Legislature, p. 984, which are attempted to be pledged as security for the bonds here involved, were donated to the *District,* and not to the *counties* as was done under the general tax remission Act, and in our opinion it is unnecessary for the District to secure the approval of the Commissioners' Court of the counties before such funds donated to the District may be pledged to secure the payment of such indebtedness. The taxes so donated to the District constitute a part of the current revenues of the District,

and under the language used in the first sentence of Section 10b, the Directors of the District are authorized to pledge such revenues to secure the payment of these bonds. Consequently the approval of the Commissioners' Courts of the various counties in the District is unnecessary.

■ The record in this case shows that the United States Government has constructed a canal running along and near the San Jacinto River, but outside the District, in order to furnish a water supply to the various industries that are now being operated along said canal. The water supplied to these industries through this canal comes from the San Jacinto River. It is proposed to use the funds received from the sale of these bonds to purchase such canal and its equipment. The Attorney General contends that the District has no right to use the funds to purchase a canal which lies entirely outside the District. The District was created in response to the command contained in Article XVI, Section 59a, of the Constitution for the control, storing, preservation, and distribution of the storm waters of the San Jacinto River for irrigation, power, and all other useful purposes. Acts, 1937, 45th Leg., Special Laws, p. 861, sec. 3. Section 10e of the amended Act, under which the District obtains its powers, reads in part as follows:

"Sec. 10e. The District shall have the power and is hereby authorized to acquire by purchase, lease, gift, or in any other manner (otherwise than by condemnation) and to maintain, use, and operate any and all property of any kind, real, personal or mixed, or any interest therein, within or without the boundaries of the District necessary or convenient to the exercise of the powers, rights, privileges, and functions conferred upon it by this Act." (Acts, 1939, 46th Leg., Spec. Laws, p. 1097, sec. 10e.

The canal which the District proposed to purchase carries the storm and flood waters of the San Jacinto River, and this water is used for irrigation, power, and other useful purposes. The distribution of this water is clearly one of the purposes for which the District was created. The statute expressly authorizes the District to purchase and operate any and all property within or without the District necessary or convenient to the exercise of the powers conferred upon the District. It is plain therefore, we think, that the District has a right to use the funds obtained from the sale of these bonds to purchase and operate the canal in question.

The writ of mandamus will issue as prayed for.

Opinion delivered January 24, 1945.