THE STATE OF TEXAS, INTERVENOR, V. FRANK G. DYER, RECEIVER.

No. A-1122. Decided March 26, 1947.
Rehearing overruled April 23, 1947.
(200 S. W. 2d Series, 813.)

*Grover Sellers,* Former Attorney General, *Price Daniel,* Attorney General, *W. V. Geppert* and *C. K. Richards,* Assistants Attorney General, for petitioner.

It was error for the Court of Civil Appeals to hold that the order of the trial court, dated December 1, 1915, appointing a receiver for the Texas Loan & Guaranty Company, a corporation,

on the grounds of its insolvency automatically dissolved the corporate existence of said corporation, under the provisions of Article 1387, section 7, R. C. S. 1925, and that said corporation ceased to exist as of that date, and that the receiver appointed at that time was only a receiver of the assets of said corporation. Moseby v. Burrow, 52 Texas 396; Murphy v. Luttrell, 120 S. W. 905; Lyons-Thomas Harbor Co. v. Perry Storage Mfg. Co., 86 Texas 143, 23 S. W. 16; Boston Ins. Co. v. Rainwater, 197 S. W. (2d) 118.

*Vinson, Elkins, Weems & Francis* and *Frank G. Dyer*, for respondent.

The Court of Civil Appeals committed no error in holding that the Texas Loan & Guaranty Company ceased to exist as a corporation on December 1, 1915, the day on which the district court appointed a receiver to take over the assets of the insolvent corporation, and that such receiver was not liable for franchise taxes subsequent to that date. Commercial Credit Corp. v. Smith, 143 Texas 612, 187 S. W. (2d) 363; Leyhe v. Leyhe, 220 S. W. 377; Lee v. Kingsbury, 13 Texas 68.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

On December 1, 1915, Arch MacDonald filed suit for debt against Texas Loan & Guaranty Co., a Texas corporation, in the district court of Harris County, and prayed for the immediate appointment of a receiver, alleging that the corporation was insolvent. The court on the same day entered an order appointing a receiver. The question here presented is whether that order dissolved the corporation.

This action was brought by the State of Texas as an intervention in the receivership suit, which is still pending, for recovery of judgment against the corporation and its receiver, Frank G. Dyer, for the sum of $9,519.56, alleged to be due the State by the corporation as franchise taxes and penalties for the years 1915 to 1945, inclusive, under the provisions of Chapter 3 of Title 122 of the Revised Civil Statutes of 1925. After trial on an agreed statement of facts the district court rendered judgment in favor of the State against the receiver for the sum of $312.50, the franchise tax and penalty for the year 1915, and denied recovery of taxes for the subsequent years, having concluded that the order of December 1, 1915, appointing the receiver adjudged the corporation insolvent and had the effect of dissolving it according to the provision of subdivision 7 of

Article 1387 of the Revised Civil Statutes of 1925 that a corporation is dissolved "whenever * * * upon proper judicial ascertainment (it) is found to be insolvent." The Court of Civil Appeals, affirming the trial court's judgment, also held that the order appointing the receiver dissolved the corporation. 197 S. W. (2d) 855.

The stipulation shows the following facts: Texas Loan and Guaranty Company, chartered under the laws of Texas in 1908, failed to make reports and to pay franchise taxes from the year 1915 to the year 1945, inclusive. On account of the failure of the corporation to pay its franchise tax for the year 1915, the Secretary of State, on July 2, 1915, forfeited its right to do business in the State, by giving notice and making entry of forfeiture on the record in his office as provided by Article 7091 and 7092 of the Revised Civil Statutes.

Arch MacDonald, a creditor of the corporation, was the sole plaintiff, and the corporation was the sole defendant in the suit filed on December 1, 1915, for debt and the appointment of a receiver, being the suit in which this action is in intervention. MacDonald's petition alleges the debt and its nonpayment, that the corporation is insolvent, and that the immediate appointment of a receiver is necessary in order to preserve and conserve its assets. The prayer is for the appointment of a receiver and for judgment for the debt. There is no allegation that the plaintiff owns twenty-five per cent of the indebtedness of the corporation. There is no prayer for dissolution of the corporation. The order appointing the receiver, entered on the day the suit was filed, recites that after consideration of the application, the answer of the defendant thereto, which consented to the appointment, and the evidence adduced in support thereof, it is ordered that the application be granted, that E. L. M. Beavens be appointed receiver, and that upon making bond in the sum of $5,000.00 he shall take possession of the properties and assets of the defendant corporation and administer its affairs under the orders of the court. The order makes no reference to a dissolution of the corporation.

Beavens qualified and acted as receiver until his death, when L. B. Moody was appointed and qualified as receiver on January 27, 1931. Moody administered the property and affairs of the corporation until he died, and respondent Frank G. Dyer was appointed on July 5, 1945, to succeed him.

The total amount of the unpaid franchise taxes and penalties

for the years 1915 to 1945, inclusive, is $9,519.56. It is agreed that Texas Loan and Guaranty Company was in fact insolvent on December 1, 1915, and has been in receivership by order of the district court of Harris County since that date, that the receiver has denied liability for any of the taxes herein sued for, and that the Attorney General has never filed suit against Texas Loan and Guaranty Company for the forfeiture of its charter, as provided by Article 7095.

The Secretary of State's entry of forfeiture, under Article 7091 and 7092, of the right of the corporation to do business did not forfeit its charter, and notwithstanding that action of the Secretary of State the corporation continued thereafter to be liable for the payment of the annual franchise tax, even though it did not thereafter conduct its authorized business. Ross Amigos Oil Co. v. State, 134 Texas 626, 138 S. W. (2d) 798; Federal Crude Oil Co. v. State, 169 S. W. (2d) 283, application for writ of error refused. It follows that the corporation is liable for the franchise taxes for which the State sues in this intervention unless the order of December 1, 1915, appointing the receiver terminated the existence of the corporation.

That order seems to come within the strict letter of subdivision 7 of Article 1387, which is that a corporation is dissolved whenever "upon proper judicial ascertainment" it is "found to be insolvent." While the order contains no express finding of insolvency, it grants the application for the appointment of a receiver, which alleges as the sole ground for the appointment the insolvency of the corporation; and thus there is implied a finding or ascertainment by the court of the corporation's insolvency. But was it the intention of the legislature in the enactment of the statute that such an order in such a case should of itself dissolve a corporation?

In Edwards v. Morton, 92 Texas 152, 153-154,46 S. W. 792, where the strict letter of a statute was not followed, the court said: "The intention of the Legislature in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. Courts will not follow the letter of the staute when it leads away from the true intent and purpose of the Legislature and to conclusions inconsistent with the general purpose of the act." A too literal construction of a statute, which would prevent the enforcement of it according to its true intent, should be avoided, Bowman v. Puckett, 144 Texas 125, 128, 188 S. W. (2d) 571.

In ascertaining the true intention of the legislature in the enactment of subdivision 7 of Article 1387, and the general purpose of the statute of which it is a part, we take into consideration the existing condition of the law at the time of the enactment of the statute and the general rules then established and applicable to its subject matter. McBride v. Clayton, 140 Texas 71, 76-77, 166 S. W. (2d) 125.

■ We refer briefly to some of the general rules as to dissolution of corporations. Since a corporation is a creature of the state by which it is chartered, the right to dissolve the corporation without its consent belongs exclusively to the state. State v. Robinson, 42 S. W. (2d) 457, 458, application for writ of error refused; Lillard v. Longergan, (10th Circuit) 72 Fed. (2d) 865, 870 (certiorari denied 293 U. S. 615, 55 S. Ct. 147, 79 L. Ed. 704) ; 13 Am. Jur. pp. 1159-1160, Sec. 1288. Whether the franchise of a corporation is to be forfeited depends upon the will of the body that created it. The forfeiture or the dissolution of the corporation cannot be claimed in a collateral proceeding merely because a ground of forfeiture may exist, and ordinarily the forfeiture or dissolution must be declared in a judicial proceeding instituted for that purpose. Galveston T. & S. A. Ry. Co. v. State, 81 Texas 572, 595, 17 S. W. 67; Murphy v. Luttrell, 56 Texas Civ. App. 149, 120 S. W. 905, 909; Moseby v. Burrow, 52 Texas 396; 13 Am. Jur. pp,. 1187, Sec. 1335; 19 C. J. S. p. 1420, Sec. 1649. Such suit, in the absence of an express statute to the contrary, can be instituted only by the State. Thompson on Corporations (3d Ed.) Vol. 8, p. 652, Sec. 6475; Fletcher's Cyclopedia Corporations (Perm. Ed.) Vol. 16, p. 798, Sec. 8077; Note 47 A. L. R. pp. 1288, 1305; 19 C. J. S. p. 1464, Sec. 1698; 13 Am. Jur. p. 1182, Sec. 1328. One state has no power to dissolve a corporation created by the laws of another state. East Line & Red River Ry. Co. v. State, 75 Texas 434, 451, 12 S. W. 690; Thompson on Corporations (3d Ed.) Vol. 8, pp. 647-648, Sec. 6466.

In suits brought for the purpose of dissolving a corporation, courts will proceed with caution and will declare a forfeiture of the charter or a dissolution of the corporation only in a clear case. Commonwealth v. United Warehouse Co., 293 Ky. 502, 169 S. W. (2d) 300; Arcola Sugar Mills Co. v. Burnham, (5th Cirsuit) 67 Fed. (2d) 981 (certiorari denied 292 U. S. 630, 54 S. Ct. 640, 78 L. Ed. 1484) ; Fletcher's Cyclopedia Corporations (Perm. Ed.) Vol. 16, p. 753, Sec. 8035; Thompson on Corporations (3d ed.) Vol. 8, pp. 656-657, Sec. 6478; 19 C. J. S. pp. 1424-1425, Sec. 1651.

It is uniformly held that a corporation is not dissolved by the mere fact that it has become insolvent. And insolvency followed by cessation of business does not dissolve a corporation. Island City Savings Bank v. Sachtleben, 67 Texas 420, 425, 3 S. W. 733; Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Texas 143, 155, 24 S. W. 16, 22 L. R. A. 802; Moseby v. Burrow, 52 Texas 396; Lucas v. Swan, (4th Circuit) 67 Fed. (2d) 106, 109, 90 A. L. R. 210, 215; Petrogradsky, etc. Bank v. National City Bank, 253 N. Y. 23, 170 N. E. 479; Fletcher's Cyclopedia Corporations (Perm. Ed.) Vol. 16, pp. 710-711, par. 8002; 13 Am. Jur. p. 1174, par. 1313.

■ A paragraph of Hildebrand's Texas Corporations which begins with the statement that a Texas corporation is dissolved whenever upon proper judicial ascertainment it is found to be insolvent, citing subdivision 7 of Article 1387, contains also the following: "The appointment of a receiver of a corporation does not ipso facto dissolve the corporation, although it is usually insolvent when a receiver is appointed." Hildebrand's Texas Corporations, Vol. 3, p. 352, Sec. 842. The general rule is that the appointment of a receiver does not dissolve a corporation. Moseby v. Burrow, 52 Texas 396, 403; United States & Mexican Trust Co. v. Delaware Western Construction Co., 112 S. W. 447; Texas & Pacific Ry. Co. v. Powers, 263 S. W. 635; Lakeside Irrigation District v. Buffington, 168 S. W. 21, 24, application for writ of error refused; Petrogradsky, etc. Bank v. National City Bank, 253 N. Y. 23, 170 N. E. 479, 482-483; Fletcher's Cyclopedia Corporations (Perm. Ed.) Vol. 16, pp. 713-714, Sec. 8004. And it is also stated as a general rule that insolvency followed by the appointment of a receiver, or the appointment of a receiver on account of insolvency, does not accomplish the dissolution of a corporation. Thompson on Corporations, (3d Ed.) p. 611, par. 6437; Moseby v. Burrow, 52 Texas 396, 403. Often the appointment of a receiver saves a corporation from dissolution, as when he successfully administers its properties and returns them to the corporation. The opinion in Lakeside Irrigation Co. v. Buffington, 168 S. W. 21, 24, application for writ of error refused, in which a receiver for a corporation was appointed in the early part of 1908 and discharged in December, 1909, after paying the corporation's debts, contains the following statement: "Consequently, after the court ceased to administer the affairs of the corporation by discharging its receiver, the corporation stood as though no receivership had been taken out. It was not in a suit to forfeit the charter that the receiver was appointed, and the corporation was not then dissolved."

It is difficult to believe that the legislature, in the enactment of subdivision 7 of Article 1387, intended to depart so far from the foregoing principles as to authorize the dissolution of a corporation, the termination of its existence, merely by a finding of insolvency in an interlocutory order appointing a receiver, entered in a suit filed by one creditor against the corporation for the collection of his debt, to which suit the State was not a party, and which, as appears from the pleadings and the order, was not instituted for the purpose of declaring a dissolution of the corporation.

■ The rule most helpful in the determination of the question presented in this case, is thus expressed in a very early decision:

"These statutes, being *in pari materia,* and relating to the same subject, are to be taken together and so construed, in reference to each other, as that, if practicable, effect may be given to the entire provisions of each. * * * The object of the rule is to ascertain and carry into effect the intention of the Legislature, and it proceeds upon the supposition that the several statutes relating to one subject were governed by one spirit and policy, and were intended to be consistent and harmonious in their several parts and provisions." Neil v. Keese, 5 Texas 23, 32-33, 51 Am. Dec. 746.

The rule applies even though the statutes were enacted at different sessions of the legislature. Cain v. State, 20 Texas 355, 362; Conley v. Daughters of the Republic, 106 Texas 80, 92, 156 S. W. 197, 157 S. W. 937; Wintermann v. McDonald, 129 Texas 275, 283, 102 S. W. (2d) 167, 104 S. W. (2d) 14. It applies with peculiar force to Acts passed at the same session. McGrady v. Terrell, 98 Texas 427, 430-431, 84 S. W. 641. As to such Acts, it has often been held that the court, in seeking the legislative intent, will read them together as if they were embraced in one act. Greene v. Robison, 109 Texas 367, 378, 210 S. W. 498; Myers v. Crenshaw, 134 Texas 500, 510, 137 S. W. (2d) 7; Garrett v. Mercantile National Bank, 140 Texas 394, 397, 168 S. W. (2d) 636; San Jacinto Conservation, etc. District v. Sellers, 143 Texas 328, 332-333, 184 S. W. (2d) 920.

Article 1387 is part of Chapter 8 of Title 32 of the Revised Civil Statutes of 1925, the subject of which is "Dissolution of Corporations," and, with certain unimportant changes in form, it is the same as the first six subdivisions of Section 4 of Chapter 166, Acts of the Regular Session, 30th Legislature (1907) pp. 309, 311-312. Section 4 of the original Act, now Article 1387,

sets out the methods by which a corporation may be dissolved, beginning with the words, "A corporation is dissolved." These words are followed by the statement in separate paragraphs or subdivisions of several methods of dissolution. One of these (the sixth in the original Act and the seventh in Article 1387) is: "Whenever a corporation upon proper judicial ascertainment is found to be insolvent."

At the same session, the Regular Session of the 30th Legislature, another statute was enacted (Chap. 183, pp. 341-343), which, with unimportant changes made by the codifiers, is now Chapter 7 of Title 32, Articles 1379-1386, of the 1925 Statutes, subject "Insolvent Corporations." The substance of the important provisions of this statute, stated generally, is as follows: It is unlawfully for any insolvent corporation to do business in the State or to exercise or retain any charter or permit. When convinced that any corporation is insolvent, the Attorney General shall institute proceedings to forfeit its charter or cancel its permit. Such proceedings shall be brought by the county and district attorneys when directed to do so by the Attorney General. Stockholders of any insolvent corporation who own 25% of its stock, or creditors who own 25% of its indebtedness, may institute suit for dissolution of the corporation. Before any such suit for dissolution is filed by the Attorney General, or under his authority, or by stockholders or creditors, leave therefor shall first be granted by the judge of the court in which the proceeding is to be instituted. Before granting leave to sue, the judge shall carefully examine the petition and may also require an examination into the facts. The court may grant the relief if it is made to appear with reasonable certainty that it should be granted. The provisions of this statute, Articles 1379-1386, are consistent with the general principles which have been mentioned above. It authorizes dissolution, because of insolvency, in a judicial proceeding instituted for that purpose, and in recognition of the rule that the right to dissolve a corporation without its consent belongs primarily to the State, the statute makes it the duty of the Attorney General, or the district and county attorneys under the direction of the Attorney General, to institute the suit. It permits the institution of the proceeding by stockholderes or creditors of an insolvent corporation only when they own 25 per cent of the stock or 25 per cent of the indebtedness; it gives effect to the doctrine that caution must be exercised and a clear case made before dissolution is declared, by requiring that the petition in the suit, by whomever it is brought, be first presented to the judge and leave obtained for its filing;

and it requires reasonable certainty for the granting of the relief.

On the other hand, if subdivision 7 of Article 1387 is construed according to its strict letter and without reference to the other statute, Articles 1379-1386, the involuntary dissolution of a corporation may be accomplished without a suit instituted for that purpose, by a mere finding of insolvency in any order or judgment in a suit filed by a single creditor, or in any other suit against the corporation where its insolvency may be a material issue. Thus construed, Section 7 of Article 1387 is inconsistent with and destructive of the purposes of the other statute, Articles 1379-1386.

But when the two statutes, which relate to the same subject and were enacted at the same session of the Legislature, are read together as if embraced in one act, as they should be read under the authorities that have been cited above, they stand together without repugnancy between their provisions. Subdivision 7, of Article 1387, is the mere statement that proper judicial ascertainment of insolvency of a corporation is one of the methods of dissolution. It does not define "proper judicial ascertainment" nor does it undertake to prescribe the procedure for procuring that ascertainment, in what kind of proceeding, or by whom instituted. We look to Article 1379 to 1385 for that procedure, and in doing so give effect and a reasonable meaning to the words "proper judicial ascertainment" used in subdivision 7 of Article 1387.

■ It is our opinion, therefore, that the intention of the Legislature in the enactment of the two statutes was that the dissolution of a corporation on account of its insolvency should be effected by suit instituted for that purpose in accordance with the provisions of Articles 1379 to 1385, and that a dissolution should not be effected by the mere finding of the fact of insolvency, as in the instant case, in a suit not brought for the purpose of dissolving the corporation and not in accordance with the provisions of those articles.

Referring to the declaration in Article 1386 that the rights and remedies given by Chapter 7, of which it is a part, are cumulative and shall not affect or repeal existing remedies or rights for the enforcement, payment or collection of fines, forfeitures and penalties, respondent makes the contention that it is apparent from the plain language of that article that the chapter was not intended to provide exclusive methods for the dissolu-

tion of corporations. The chapter does not provide exclusive methods for dissolution. There are other methods for dissolution than by suit and judgment for dissolution on account of insolvency. Such other methods are enumerated in subdivisions 1 to 6 of Article 1387 and they are not changed, affected or repealed by the provisions of Chapter 7. We hold, construing subdivision 7 of Article 1387 and Articles 1379 to 1385 together, that the last mentioned articles prescribe the procedure for procuring the judicial ascertainment of insolvency named in subdivision 7 as one of the methods of dissolution, thus not changing subdivision 7, but making it definite and giving to its words "proper judicial ascertainment" a reasonable meaning consistent with the general purposes of the two statutes.

The judgments of the district court and the court of civil appeals are reversed, and the cause is remanded to the district court, with instructions to render judgment in favor of the State of Texas against Texas Loan and Guaranty Company and Frank G. Dyer, as receiver of the said corporation, for the full amount of the franchise taxes and penalties sued for herein, with proper provisions for the enforcement and the collection of the judgment.

Opinion delivered March 26, 1947.

Motion for rehearing overruled April 23, 1947.