

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 21, 1951

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-1246

Re: Several questions respecting
the effective date of increases
in store and mercantile estab-
lishment taxes imposed by
House Bill No. 285, Acts 52nd
Legislature, 1951.

Dear Mr. Calvert:

You request the opinion of this office upon the questions
presented in your letter of June 29, 1951, which is as follows:

"Before the enactment of House Bill No. 285
of the Regular Session of the Fifty-second Legisla-
ture this department was collecting chain store taxes
under Article 1111d of the Penal Code.

"Section XVI of House Bill No. 285 of the Regular
Session of the Fifty-second Legislature amends cer-
tain sections of Article 1111d by increasing the amount
of the application fee, the amount of the license, and
bringing in a fee for exempted stores. The last para-
graph of Section XVI reads as follows:

" '(d) All fees listed above are for a period of
twelve (12) months. Upon the issuance of any license
after the first day of January of any one year for the
remainder of the year, there shall be collected such
fractional part of the license fee hereinabove fixed
as the remaining months in the calendar year (includ-
ing the month in which such license is issued) bears
to the twelve (12) month period.'

"House Bill No. 285 carried an emergency clause
and received the required number of votes to make it
become effective immediately. However, the emergency

clause carries the following provision:

" 'The crowded condition of the calendar creates an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each House be suspended, . . . and this Act shall take effect and be in force from and after the first day of September, A.D. 1951.'

"It follows, therefore, that Section XVI becomes effective September 1, 1951. I shall thank you to give me answers to the following questions:

"1. Does Section XVI require the collection on the increased rate of the application fees and license fees for the period of September 1, 1951 to December 31, 1951 on those stores or mercantile establishments that have been issued licenses for the year 1951 under Article 1111d of the Penal Code?

"2. Does Section XVI require the collection of application fees and exemption fees from those stores or mercantile establishments that came under the exemption classification to Article 1111d for the period September 1 to December 31, 1951?

"3. On what date will the penalty provision of Section XVI become effective covering the period from September 1, 1951 to December 31, 1951?

"4. To what fund will the penalties collected be deposited in the State Treasury?

"For example: A store operator, on January 1, 1951, paid the store tax and license fee for the year 1951, of $1.58. On September 1, 1951 two-thirds of the year will have been earned under this license payment. But on September 1 the new rate of $4.00 for a license and $1.00 for an application fee becomes effective. What does this store operator owe on application and license fees on September 1, 1951?

"Under Section XVI of House Bill No. 285, if a store operator is delinquent in the payment of his 1951

additional application and license fee, can a license is-
sue to him for the year 1952 before these additional
fees have been paid? Would the same rule apply to the
issuance of an exemption certificate to a place of busi-
ness exempted under the statute? In answering these
two questions reference is made to the last paragraph
of 1111d of the Penal Code, as amended by the Acts of
the First Called Session of the Fiftieth Legislature,
Section $5\frac{1}{2}$."

To answer your questions we must ascertain (1) the
date upon which the Legislature intended House Bill 285 to be-
come effective, and (2) the intention of the Legislature as to
whether all the tax rates prescribed therein became operative
upon that date. It is therefore necessary to set forth the legis-
lative history of House Bill 285 and apply the rules of statutory
construction in order to arrive at the intention of the Legisla-
ture.

After the close of the Regular Session of the 51st Legis-
lature in 1949, it became apparent that the revenues to be collected
under the rates provided in the taxing statutes then in effect would
be insufficient to meet the necessary current expenditures of the
State for the biennium ending August 31, 1951, and in order to avert
the deficit forecast by the Comptroller and to provide sufficient
funds for the operation of the State Hospitals and Special Schools,
the Legislature was called into Special Session for the purpose of
enacting tax legislation to raise revenues in an amount sufficient
to avert the deficit and provide for the needs of the State Hospitals
and Special Schools. House Bill 3, adopted by the Legislature at
the Special Session (Acts 51st Leg., 1st C.S. 1950, ch. 2, p. 10)
provided for an additional tax of 10% of the basic levies of all the
taxing statutes, with certain exceptions not here pertinent, such
additional tax to be in effect for the years 1950 and that part of
1951 ending on August 31st. The revenues derived therefrom
were allocated to the State Hospital Fund with the exception of
the portion required by Section 3, Article VII of the Constitution
of Texas to be set apart for the benefit of the public free schools.

At the Regular Session of the 52nd Legislature in 1951,
House Bill 285, as introduced in its original form, provided for
a continuation of the taxing statutes therein contained at the rates
then in effect and contained the customary form of emergency
clause. While in committee, the original bill was amended as a

whole by increasing the basic rate of all of the taxing statutes by 10%, using practically the identical language contained in House Bill 3 with certain exceptions for the purpose of clarifying the application of the increased rate. The amended bill also carried an emergency clause. The amended bill was amended thereafter by striking certain sections therefrom relating to the tax upon stores and mercantile establishments and substituting therefor the provisions of Section XVI of the present act. With certain other amendments not pertinent to this opinion, House Bill 285 was then passed by the House and sent to the Senate where it was referred to a subcommittee of the Committee on State Affairs.

The Senate subcommittee called upon this office for assistance in checking the provisions of House Bill 285, and the writer of this opinion was present with the Senate Committee for that purpose. Among the objectives of the Committee was the checking of House Bill 285 for the purpose of ascertaining that the 10% increase of the basic tax rates of all of the taxing statutes had been figured correctly. This check was made by comparison of the basic tax statute with the additional 10% tax provided by House Bill 3, and where the language in House Bill 3 was inconsistent with the language of the original statutes the language of House Bill 285 was carefully checked so that the 10% increase should be clear and unmistakable. The sole exception to the language raising the basic rate of 10% was found in Article XVI which raised the basic rate of the tax on stores and mercantile establishments in excess of 10%, created additional exemptions therefrom, provided for exemption certificates and fees therefor, and other changes, and provided for service fees, penalties, etc., in connection with the collection of the tax.

House Bill 285 as submitted to the Senate contained the customary emergency clause, and the writer called the attention of the Committee to the fact that if the act was passed as an emergency measure there might be a period up to September 1, 1951, when the taxpayer would be paying two 10% increases, one under House Bill 3 and the other under House Bill 285. As an alternative, if the act took effect ninety days after the adjournment of the Legislature without an emergency clause, there might be a period between September 1, 1951, and the effective date of the act when the 10% increase would not be effective and the taxes would be levied at the rate provided in the taxing statutes prior

to their amendment by House Bill 285. The Committee then stated that Article XXV containing the emergency clause should be amended so as to provide that House Bill 285 should become effective from and after September 1, 1951, in order to insure continuance of the 10% additional tax provided by House Bill 3.

The Senate Committee adopted a substitute bill for House Bill 285 which increased the basic rate of all taxing statutes by 10%, changed the emergency clause (Sec. XXVII) so that the act should become effective from and after September 1, 1951, repealed certain portions of House Bill 3, and contained other amendments to House Bill 285 which are not pertinent to this opinion. The substitute bill was passed by the Senate, and the House refusing to concur in the Senate amendments, House Bill 285 was referred to a joint conference committee of the House and Senate. In this connection, House Bill 285 as finally passed is almost identical with the Senate substitute in so far as the taxes levied on stores and mercantile establishments (Sec. XVI), insurance taxes on gross premium receipts (Secs. XV, XVIII, and XXI), and gross receipts on motor carriers (Sec. XIII). The basic rate of the franchise tax statute, Article 7084, Revised Civil Statutes, was raised from $1.00 to $1.25 by the conference committee (Sec. IX).

In construing a statute, the cardinal rule is to ascertain the intention of the Legislature in enacting the law. This intention, once ascertained, must be enforced although it may not be consistent with the strict letter of the statute. In ascertaining the true intention of the Legislature, the existing condition of the law at the time of its enactment and the general rules then established and applicable to its subject matter should be considered. State v. Dyer, 145 Tex. 586, 200 S.W.2d 813 (1947). If the language used in the act leaves its intent obscure, the courts may resort to certain aids in construction such as the purpose sought to be accomplished, the history of the legislation, and the public policy of the State. Harris v. City of Fort Worth, 142 Tex. 600, 180 S.W.2d 131 (1944). The object in construing any statute is to ascertain from the language used in the statute the intention of the Legislature, and where the statute is a taxing statute, the act should be construed in connection with other laws relating to the assessment and collection of taxes. White v. McGill, 131 Tex. 231, 114 S.W.2d 860 (1938). The Legislature is free to fix in each act the time it, as a whole or in part, shall take effect, and may therefore provide that it shall

take effect in whole or in part from its passage, approval, or at a fixed date. Chambers v. Baldwin, 274 S.W. 1011 (Tex. Civ. App. 1925). The intention of the Legislature being clearly manifested by its history and by the emergency clause that it should become effective as a revenue producing measure upon its effective date, that intention should control. Texas Co. v. Stephens, 100 Tex. 628, 103 S.W. 481 (1900). In determining the legislative intent, the entire act should be looked to and this includes the caption, the body of the act, and the emergency clause. Popham v. Patterson, 121 Tex. 615, 51 S.W.2d 680 (1932).

Applying these rules of statutory construction to House Bill 285, and bearing in mind that House Bill 3 imposed an additional tax of 10% in practically all of the taxing statutes amended by House Bill 285, with certain exceptions above noted, the continuance of the 10% increase in effect after the expiration date of House Bill 3 on August 31, 1951, makes it a reasonable conclusion that the Legislature intended to carry the 10% increase into effect for the entire calendar year 1951 except in cases where such increase was specifically repealed. Construing all of the provisions of House Bill 285 together, the intendment was to keep the 10% additional levy except where the basic levy of the taxing statute was raised, in which case the increase was to become effective upon September 1, 1951, without regard to whether the tax was payable in advance upon an annual, quarterly, or monthly basis.

To permit certain sections of House Bill 285 to become effective upon dates other than September 1, 1951, because the taxes might be payable upon an annual or quarterly basis which had been paid in advance prior to the effective date of the act and to continue such sections in effect at the rate provided in the taxing statute prior to amendment and after the lapse of House Bill 3 would not only be discriminatory but would thwart the intention of the Legislature.

In Mann v. Gulf States Utilities Co., 167 S.W.2d 55.7 (Tex. Civ. App. 1942, error ref.) the Court held:

"An occupation or excise tax may be increased during the year in which it is payable, or may be increased at any time before the expiration of the period for the enforcement of the tax, although the tax first levied or fixed has been paid in advance."

In the same case the Court said,

" . . . To hold that the Legislature intended that the amended act should become effective on July 1, 1941, would render nugatory the specific intention of the Legislature to make the amended act effective on May 1, 1941, as expressed in the act. . . ."

In view of the legislative history of House Bill 285 and taking into consideration that the manifest intention of the Legislature in its passage was to raise additional revenues to meet the necessary expenditures of State government, it is our opinion that the rates of the taxing statutes contained in House Bill 285 will become effective for all purposes as to each of the sections therein contained from and after September 1, 1951.

Your first question is:

"Does Section XVI require the collection on the increased rate of the application fees and license fees for the period of September 1, 1951 to December 31, 1951 on those stores or mercantile establishments that have been issued licenses for the year 1951 under Article 1111d of the Penal Code?"

It is clear that the Legislature intended by the adoption of House Bill 3 at the Special Session in 1950, and House Bill 285 at the Regular Session in 1951, that the license fees collected for 1951 would be those prescribe in Article 1111d, Vernon's Penal Code, plus two-thirds of 10% thereof, plus one-third of the difference between the rates prescribed in Article 1111d and those prescribed in House Bill 285. It was manifestly the legislative intent to increase the license fees on stores and mercantile establishments in order to pay the increased cost of government and avoid a deficit in the State's General Revenue Fund, thereby keeping the State on a cash basis in accordance with the mandate expressed in Section 49a of Article III of the Constitution of Texas.

If the Legislature had desired to make the provisions of Section XVI effective so that the increased fees would only be applicable for the licenses issued on January 1, 1952, and thereafter, it could have specifically provided therefor in the statute. Chambers v. Baldwin, supra. This it did not do.

In Mann v. Gulf States Utilities Co., supra, the Court said, in discussing the case of Texas Co. v. Stephens, supra,

" . . . The Court held that in view of the evident intention of the Legislature, and the fact that the act was passed with the emergency clause, it took effect from the date of its passage, and imposed the tax for the fraction of the quarter between the date of the passage of the act and the end of the first quarter fixed by the act."

The Court also said,

" . . . A mere mathematical calculation would determine the portion of the quarter period remaining after the effective date of the act, . . ."

Applying the rule stated in the Mann case, Section XVI of House Bill 285 requires the collection on or after September 1, 1951, of additional license fees for the last four months of the year 1951, as follows: one-third of the difference between the fees levied under Article 1111d, Vernon's Penal Code, and those levied by House Bill 285.

Your second question is:

"Does Section XVI require the collection of application fees and exemption fees from those stores or mercantile establishments that came under the exemption classification to Article 1111d for the period September 1 to December 31, 1951?"

Since Section XVI requires that an application for exemption be made by those coming within its exemptive provisions and the payment of exemption fees therefor, it also requires the payment of an application fee in connection with the applications for exemption. Since XVI in its entirety becomes effective from and after September 1, 1951, exemption fees should be collected from all classes of stores and mercantile establishments named in subsection 5 of Section XVI, House Bill 285 which were exempt thereunder on September 1, 1951, for the last four months of the year 1951 as follows: one-third of the exemption fees levied by Section XVI, House Bill 285.

Your third question is:

"On what date will the penalty provision of Section XVI become effective covering the period from September 1, 1951 to December 31, 1951?"

The penalty provisions of Section XVI other than the $5.00 service fee, apply only to renewal applications and therefore will not attach to the additional license fees levied by House Bill 285 until after December 31, 1951, and then only as to renewals. As Comptroller you are authorized and empowered under the provisions of Section 2(b) of Section XVI, House Bill 285, to promulgate regulations to apply for the collection of the amount of license and application fees due under the provisions of House Bill 285 and on the effective date thereof. Under such rule making power as Comptroller you could require payment of the additional fees for the balance of the year 1951 on September 1, 1951, or any date subsequent thereto which you may deem reasonable and proper.

Your fourth question is as follows:

"To what fund will the penalties collected be deposited in the State Treasury?"

The sole penalty provision contained in Section XVI is the 5% penalty added to the amount of the license fee where the taxpayer fails to make application for license on the due date thereof. Section 9 of Article 1111d, Vernon's Penal Code, provides that all moneys collected by the Comptroller of Public Accounts under the provisions of the Act shall be paid into the State Treasury; one-fourth of which shall be credited to the account of the Available School Fund and the remainder to the account of the General Fund. Section XXV, House Bill 285, provides that except as otherwise provided in the act, the taxes levied shall be allocated as provided by Article XX, House Bill 8, Acts, 47th Leg., 1941, ch. 84, p. 269, and any amendments thereto. However, Article XIX of House Bill 8, Acts of the 47th Legislature, which amended Section 5, Article 1111d, Vernon's Penal Code, provided that the taxes levied by Article 1111d should be allocated as provided therein. Since the 5% penalty is a part of the tax, one-fourth of all penalties should be credited by the State Treasurer to the account of the Available School Fund and the remainder to the account of the General Fund.

Hon. Robert S. Calvert, Page 10 (V-1246)

## SUMMARY

The provisions of House Bill 285 require the collection on or after September 1, 1951, of additional license fees for stores and mercantile establishments for the last four months of the year 1951, of one-third of the difference between the fees levied under Article 1111d, V.P.C., and those levied by H. B. 285. Exemption fees should be collected from all classes of stores and mercantile establishments named in subsection 5 of Sec. XVI, H.B. 285, which were exempt thereunder on September 1, 1951, on the basis of one-third of the exemption fees levied by Sec. XVI, H.B. 285. The penalty provisions of Sec. XVI, other than the $5.00 service fee, apply only to applications for renewal of license, and therefore will not attach to the additional license fees levied by H.B. 285 until after December 31, 1951. The penalties collected under Section XVI of H.B. 285 are allocated one-fourth to the account of the Available School Fund and the remainder to the account of the General Fund in the State Treasury.

Yours very truly,

APPROVED:

Charles D. Mathews
First Assistant

Price Daniel
Attorney General

CKR:mf

PRICE DANIEL
Attorney General

By C. K. Richards

C. K. Richards
Assistant