**CANTU TRUCKING & MATERIALS CO., INC., Appellant,**

v.

**The STATE of Texas, et al., Appellees.**

**No. 3–87–014–CV.**

Court of Appeals of Texas, Austin.

Aug. 12, 1987.

Rehearing Denied Sept. 9, 1987.

Max H. Jennings, Houston, for appellant.

Jim Mattox, Rodney D. Parrott, Asst. Atty. Gen., Austin, for the State.

Timothy Mashburn, Robinson, Felts, Starnes, Angenend & Mashburn, Austin, for Aggregate Haulers, Inc., All-Ways Trucking Co., C.W. & A., Inc., Odeen Hibbs, Odeen Hibbs Trucking Co., Phoenix Motor Express, Inc., Sunbelt Trucking, Inc., Tramel, Inc., d/b/a T, Inc., Transit Control Services, Inc., d/b/a T.C.S., and Tandem, Inc.

Before POWERS, SMITH* and CARROLL, JJ.

POWERS, Justice.

Cantu Trucking & Materials Co., Inc. appeals from a trial-court judgment, in a suit brought by the State, that permanently enjoins Cantu from transporting goods or commodities by motor vehicle over State highways for compensation or hire, between incorporated cities, unless the company first obtains a license from the Texas Railroad Commission pursuant to the provisions of the Texas Motor Carrier Act, Tex. Rev.Civ.Stat.Ann. art. 911b (1964 & Supp. 1987) (hereinafter "the Act").[1] We will affirm the judgment.

Cantu owns or leases some 22 motor trucks that it uses to transport sand, gravel, and other road-building materials in the course of the company's business operations. In some cases, Cantu sells the materials from inventories that the company maintains near the towns of Eagle Lake, Edna, Ellinger, Columbus, and Cuero, Texas, having either purchased the materials there or mined and processed the materials from nearby "pits." On these occasions, Cantu's carriage of the materials originates at the company's yard in one of the listed towns and ends at the place of delivery designated by the buyer. On other occasions, Cantu purchases materials from other suppliers and contemporaneously resells the materials to others. In such cases, Cantu's carriage of these materials originates at the location of *its* supplier, where Cantu loads its trucks, and ends at the delivery point designated by the purchaser to whom Cantu has resold the materials.

Cantu conducts the foregoing operations between incorporated cities and over State highways. In the State's view, they amount to the "carriage of property for compensation or hire" and may not lawfully be conducted without a license (a "permit" or a "certificate of public convenience and necessity"), issued by the Texas Railroad Commission, which Cantu does not possess. *See* §§ 1, 2, 3, 4, 5a, and 6 of the Act. Cantu rejoins that its unlicensed operations are within the permissive terms of the Act because they fall within the scope of the exceptions set out in the Act for the transportation of property when such carriage is "merely incidental" to another business, art. 911b, § 1a(1)(a), or when the property has been purchased in good faith by one who is engaged in buying and selling such property and holds title to

* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex.Gov't Code § 73.012 (Supp.1987).

1. In addition to the State of Texas, the following motor carriers appear as appellees, having intervened in the trial-court proceedings: Aggregate Haulers, Inc.; All-Ways Trucking Co.; C.W. & A., Inc.; Odeen Hibbs; Odeen Hibbs Trucking Co.; Phoenix Motor Express, Inc.; Sunbelt Trucking, Inc.; Tramel, Inc., "dba" T. Inc.; Transit Control Services, Inc., "dba" T.C.S.; and Tandem, Inc.

it in the course of its carriage. Art. 911b, § 16(j).[2] The State replies by allegations that Cantu's purported business of buying and selling the materials is "a sham and a fraud [intended] to subvert the provisions of [the Act];" that the transportation of such materials is not *merely incidental* to another business; and, that the company did not hold *good-faith* title to the materials in the course of transporting them.

**2.** The two statutory provisions read as follows:
Sec. 1a. (1) Provided, however, that the term "Motor carrier" ... shall not be held to include:
(a) Any person having a regular, separate, fixed, and established place of business, other than a transportation business, where goods, wares, and merchandise are kept in stock and are primarily and regularly bought from the public or sold to the public or manufactured or processed by such person in the ordinary course of the mercantile, manufacturing, or processing business, and who, merely incidental to the operation of such business, transports over the highways of this State such goods of which such person is the bona fide owner by means of a motor vehicle of which such person is the bona fide owner; ....

\* \* \* \* \* \*

Sec. 16(j).... No provision of this Act will apply to any person who is engaged in the bona fide business of buying, selling and transporting any product or commodity when such person has in good faith purchased such product or commodity and at the time of and during the transportation thereof such person has and owns title to such product or commodity.

Section 1a(1)(a) was enacted for a specific purpose—to supersede by legislation the decision of the Supreme Court of Texas in New Way Lumber Co. v. Smith, 96 S.W.2d 282 (Tex.1936). *See* Acts 1941, 47th Leg., ch. 290 § 4 at 464. In that decision, the Court held that a lumber company came within the statutory definition of a "motor carrier" so as to be subject to regulation by the Commission where the evidence showed that the company operated its own trucks between incorporated cities and charged more for its lumber at the place of delivery than at the place of origin, the difference in price being calculated by the company according to the distance travelled and the weight of the truck.
Section 16(j) originated in a 1955 amendment to a provision found in the Texas Penal Code. Acts 1955, 54th Leg. ch. 396 § 2 at 1042. The amendment made unlawful any "display or use [of] a false or fictitious bill of sale, bill of lading, or manifest [with respect to] commodities being transported over the highways of this State"; it authorized a fine for any violation of the statute; and, it concluded with the exception that now constitutes § 16(j) of the Motor Carrier Act, as we have quoted it in the text of this

After trial, the court below held that § 16(j) of the Act was unconstitutional owing to a title defect and that Cantu's operations, shown in the evidence adduced by the parties, did not come within the scope of the exception established in § 1a(1)(a). The trial court's judgment is supported by findings of fact, some of which we have summarized in a footnote.[3] Cantu appeals to this Court contending that the trial court

opinion. In 1973, the Legislature transferred the provision from the Texas Penal Code to the Motor Carrier Act. Acts 1973, 63rd Leg. ch. 399 § 5 at 995.
In *State v. Ball,* 703 S.W.2d 727 (Tex.App.1986, no writ), the court held that § 16(j) was intended by the Legislature "to function as an exemption to the whole" of the Motor Carrier Act rather than being limited to the antecedent penal provision of which it was originally a part— that is, the prohibition of any display or use of false or fictitious manifests, bills of lading, and bills of sale. 703 S.W.2d at 729. Because Cantu relies heavily upon this holding, we will assume its correctness without deciding the issue. That is to say, we will assume that the scope of § 16(j) is coextensive with the Act.
In *State v. Ball, supra,* the court also stated that it would not "be guided by federal commerce precedents in which spurious buy-and-sell operations have been held to be for-hire transportation which should be regulated," resting its conclusion upon the assertion that the pertinent *federal statutes contained no language similar to that found in § 16(j). Id.* We hold that § 16(j) *does* reach "spurious buy-and-sell operations." We need not refer to the "federal commerce precedents," however, for the intent of § 16(j) is abundantly clear to us for the reasons set out in our discussion of the good-faith requirements of the two provisos.

**3.** Some of the "findings of fact" are obviously conclusions of law. We regard the following as being material to the appeal:
a. Since 1985, Cantu has regularly transported road-building materials between incorporated cities for hire.
b. In such cases, the "only service performed by [Cantu] was the actual transportation of the materials from origin to destination."
c. No materials inventory of any kind, at the Eagle Lake facility, was reflected on the company's 1984 and 1985 property-tax "valuations" or on any of the company's income tax "returns, balance sheets, profit and loss statements or any other accounting statements reasonably expected of businesses in the bona fide business of buying and selling goods and commodities of the nature claimed by [Cantu]."
d. The company's "truck drivers utilize cars which indicate 'Cantu Trucking' and which in

erred in holding § 16(j) unconstitutional and that the evidence is legally and factually insufficient to sustain the trial court's determination relative to § 1a(1)(a). The parties' briefs focus at length upon the first contention. We shall *presume* the constitutionality of § 16(j) and need not address Cantu's arguments in that regard. We turn then to Cantu's second contention in this Court—that the evidence is legally and factually insufficient to support the trial court's determination that Cantu's operations did not fall within the scope of the exception set out in § 1a(1)(a) of the Act. In accordance with our presumption of constitutionality, we may also consider the sufficiency of the evidence with respect to § 16(j) of the Act, for the two sections are coextensive in the present case.

The provisos found in § 1a(1)(a) and § 16(j) obviously are in *pari materia.* They must therefore be construed together under an assumption that the Legislature intended them to be consistent, harmonious, and governed by a single policy and spirit. *State v. Dyer,* 145 Tex. 586, 200 S.W.2d 813 (1947). A listing of the combined elements of the two provisos indicates rather clearly, in the present case at least, that § 16(j) does not have a scope that is greater or different than that of § 1a(1)(a): [4]

### Section 1a(1)(a)

[ 1] "Any person having a regular, separate, fixed, and established place of business,

[ 2] "other than a transportation business,

[ 3] "where goods ... are kept in stock and are primarily and regularly bought from the public or sold to the public or manufactured or processed by such person

[ 4] "in the ordinary course of the mercantile, manufacturing, or processing business, and

[ 5] "who, *merely incidental* to the operation of such business,

[ 6] *"transports over the highways of this state such goods of which such person is the [good faith] owner,*

[ 7] "by means of a motor vehicle of which such person is the [good faith] owner; ...."

### Section 16(j)

[ 8] "[A]ny person who is engaged in the [good faith] business of buying, selling and transporting any product or commodity

[ 9] "when such person had *in good faith purchased* such product or commodity and

[10] "at the time of and *during the transportation thereof such person has and owns title to such product or commodity."*

(Emphasis added). The various good-faith requirements contained in both provisos imply a legislative intention that the statutory criteria may not be used by a carrier as a

---

no way refer to any business other than a trucking business."

e. At none of the company's facilities are "there any advertising of any materials for sale or [any other indications] to the public that materials may be bought" or sold there.

f. "In a significant number, if not most, cases" Cantu transports materials at no risk to itself because it does not "dispatch a truck for pickup of materials until and unless the load is ordered by the receiver and a commitment for payment is made by the receiver."

g. The company "does not maintain any regular, separate, fixed and established place of business where construction materials are primarily and regularly processed or manufactured."

h. The company's "primary and regular business" is transportation and such transporta-

tion is "not incidental to any non-transportation business."

i. The company "has on numerous occasions held itself out to the general public, to state agencies, to prospective bidders and to others as a hauling contractor and in the for-hire transportation business."

4. We cannot, for example, imagine that the Legislature intended to distinguish between and treat differently two persons, one who *owns* in good faith (§ 1a(1)(a)) the goods he is transporting and another who *purchases* goods in good faith and owns them while transporting them (§ 16(j)). In the present case, at least, we see no distinction between a non-transportation business where goods are bought, sold, processed, or manufactured and transported (§ 1a(1)(a), and a good-faith business of buying, selling, and transporting goods (§ 16(j)).

guise for what is, in reality, a transportation business subject to regulation by the State. Even good-faith operations are circumscribed by the requirement in § 1a(1)(a) that the carriage of goods be "merely incidental" to some business other than the transportation business. When the carriage of goods comes within the letter of the law as set out in the two provisos *and* within the spirit and intent thereof, such carriage is exempt from regulation. This is *not* to say, however, that the spirit and intent of the two provisos are satisfied when the basic letter of the law is met.[5] So much is manifest in the express requirements of good faith.

We should note at this point the fundamental nature of the two provisos. They constitute *affirmative defenses* in any suit by the State to enjoin motor-carrier operations on a theory that the operations are unlawful because conducted without a permit or certificate issued by the Commission. The burden of proof therefore lay upon Cantu to establish the requisite elements specified in the two provisos; the burden did not lie upon the State to negative them. *Davis v. State,* 167 Tex.Cr.R. 109, 318 S.W.2d 668 (1958); *Michelle Corp. v. El Paso Retailers Association,* 626 S.W.2d 615 (Tex.App.1981, writ ref'd n.r.e.); *Holguin v. Villalobos,* 212 S.W.2d 498 (Tex.Civ.App.1947), *jdgmt mod. & aff'd,* 146 Tex. 474, 208 S.W.2d 871 (1948); Comment, *Constitutionality of Affirmative Defenses in the Texas Penal Code,* 28 Baylor L. Rev. 120 (1976). Viewed correctly, Cantu's contention on appeal must be that it established conclusively or as a matter of law the elements required by the two provisos.

Under the express terms of the two provisos, Cantu was required to establish two particular elements that are determinative of its contentions on appeal. First, in addition to the other elements set out in the two provisos, Cantu was obliged to establish that the entirety of its carriage of materials was *merely incidental* to a business other than the transportation business. Second, with particular reference to Cantu's carriage of materials purchased by it from other suppliers, with their contemporaneous re-sale to others, Cantu was obliged to establish that its acquisition of title was in *good faith,* as opposed to a colorable, feigned, or fraudulent title acquired for no purpose other than to evade the State's regulation of motor carriers under the Act. The trial court's findings of fact suggest reasonable grounds for concluding that Cantu failed to carry its burden with respect to the two elements just mentioned. Cantu does not assail these findings as being without sufficient evidence to support them, nor does the company contend they are invalid or inapplicable for any reason. We must therefore take them as being undisputed and true. *Whitten v. Alling & Cory Company,* 526 S.W.2d 245 (Tex.App.1975, writ ref'd). Indeed, in Cantu's brief on appeal, the company argues merely that the evidence shows two occasions when its purchase of materials from other suppliers *was* within the good-faith requirements of § 16(j). If we assume Cantu's compliance with the statute on those two occasions, however, that does not subvert the judgment below because it rests upon evidence that was more far reaching with respect to Cantu's operations.

We therefore affirm the judgment of the trial court.

---

**5.** *State v. Dyer,* 145 Tex. 586, 200 S.W.2d 813, 815 (1947); *Southern Surety Co. v. Hendley,* 226 S.W. 454, 457 (Tex.Civ.App.1920, writ ref'd). "Not in the letter but in the spirit; for the letter killeth, but the spirit quickeneth." 2 Corinthians 3:6.