STATE OF MISSOURI at the Relation of GEORGE W. WAGNER, Supervisor of Building and Loan Associations, v. FARM & HOME SAVINGS & LOAN ASSOCIATION, a Corporation, Defendant, GEORGE KISSINGER ET AL., Appellants.—90 S. W. (2d) 93.

Division Two, January 4, 1936.

*Hallett & Hallett* for appellants.

*Roy McKittrick,* Attorney General, and *James L. HornBostel,* Assistant Attorney General, for Supervisor of Building & Loan Associations of Missouri.

*Cyrus Crane, Boyd Ewing, Lynn Ewing, Lathrop, Crane, Reynolds, Sawyer & Mersereau* and *Ewing, Ewing & Ewing* for Farm & Home Savings & Loan Association of Missouri.

TIPTON, P. J.—In the year of 1893, the defendant, Farm and Home Savings and Loan Association of Missouri, was organized as a building and loan association with its home office at Nevada, Missouri. On June 2, 1932, the State of Missouri acting by and through its officer, George W. Wagner, Supervisor of Building and Loan Associations, and at the request of the board of directors of the defendant association, took charge of this association and its assets and took over the management and conduct of its business.

On June 6, 1932, the State of Missouri at the relation of George W. Wagner, respondent, applied to the Circuit Court of Vernon County, Missouri, for appointment of the respondent as temporary receiver, which application was granted. The court directed him to take the necessary steps to determine the financial condition of the defendant association and report to that court the results of his examination.

On December 10, 1932, the respondent, Wagner, filed an application in that court stating that his appraisals, examination and audit disclosed that the defendant association was not in condition to safely resume business unless reorganized, and presented to that court a general plan for its reorganization. On the same day the court made an order notifying the shareholders that such plan would be taken up for hearing and consideration, approval or rejection on January 5, 1933. On January 4, 1933, at the meeting of the shareholders, the plan of reorganization was approved.

On February 9, 1933, the court entered a decree approving the plan as proposed. In this decree the court found among other things that the plan of reorganization was fair and reasonable; it provided for the issuance to each shareholder of shares of stock and certificates of interest which would, as to each shareholder, repre-

sent his fair proportion, on a ratable basis, of all the assets of the association; and that the division of the assets into two groups to be known as group A and group B, with the assets in group B (the secondary and frozen or slow assets) to stand as a guaranty and security for any losses in the assets in group A; such plan would tend to stabilize the value of the assets in group A and place a sound value upon the shares of stock to be reissued in reorganization against such assets, at the same time preserving to each member his exact proportionate part of whatever recovery might be made from the assets in group B, and that such division of assets was and would be to the advantage of the association and all of its members.

The decree further stated that to compel the reorganized association to pay at once to any member in cash the sum representing his proportion of the value of all the assets, would impose a condition and burden upon the reorganized association impossible of performance and would render the reorganization ineffectual; and that to permit a shareholder to file notice of withdrawal before the reorganized association had a reasonably sufficient period of time to complete reorganization by reissuance of certificates and settlements with borrowing members, would be detrimental and to the disadvantage of the association and of all its members; and that twelve months would be a necessary and reasonable period of time to complete such reissuance and settlements and during which no withdrawals should be permitted.

That the payment of withdrawals for a considerable period of time after reorganization would be extremely difficult and might result in the preferences to withdrawing members and that the redemption of its shares by the association through payment of withdrawals in cash during such period of time should be on such basis as would not result in the preferment of withdrawing members to the detriment and disadvantage of those members who would not withdraw and that the withdrawal fees provided for by the plan of reorganization were fair and reasonable and necessary to the successful operation of the plan.

That the allowance to a borrowing member in the repayment or reduction of his loan owing to the association of a credit on account of the shares of stock of the association pledged to secure such loan in a sum equaling 84.3 per cent of the book value of such pledged shares as of June 6, 1932 (that is, the allowance of the value of the shares of such member as determined by the appraisal, examination and audit), would not result in the preference of such member but would result in a proper and equitable readjustment of the affairs of the association and of its members and would tend to effect collections upon loans which might otherwise be uncollectible and which might result in loss to the association and to its members, and that the allowance of such credits to borrowing members was

then and would result to the best advantage of the association and all of its members, both borrowing and nonborrowing.

That the plan of reorganization was submitted to a meeting of the shareholders of the association duly and regularly called for the purpose of considering any proposed plan or plans of reorganization, and was approved and adopted by the unanimous vote of the shareholders present and voting at the meeting holding in excess of fifty per cent of the outstanding stock of the association, both in number of shares and in value; that the shareholders objecting to this plan hold less than one per cent of the outstanding shares of the association, both in number of shares and in value.

That under the business, economic and financial conditions then prevailing, it was to the best interest of the State of Missouri as well as to the best interest of the shareholders of the association, that it be reorganized and the drastic alternative liquidation, with its resulting damage to the State and loss to the shareholders, avoided.

In its decree approving the plan and overruling and disapproving all objections, the court ordered the association to proceed with the reissuance of the shares of stock pursuant to the plan and ordered the respondent Wagner, and the board of directors of the association to prepare and submit to the court for confirmation, a statement showing the assets and value of assets in group A and a statement showing the assets to constitute group B, and ordered that no withdrawals be made prior to twelve months from date of the reorganization. On March 17, 1933, statements of assets in two groups were filed and the court entered two orders, one approving the statement and classification of assets and the other approving the final report of and discharging the receiver. The appellants have appealed from the decree approving the plan of reorganization.

There were eighty-eight shareholders who objected to the reorganization. Since the date of the decree all of the objecting shareholders except six have either approved and accepted the reorganization by having the association reissue to them shares of stock in the reorganized association or have surrendered their shares or divested themselves of all interest in the defendant association.

Appellants contend that the trial court erred in (1) entering a decree authorizing the reorganization as provided in the plan filed by the receiver in (a) that the division of the assets into two groups with the shares of building and loan stock to be issued against group A assets not to be withdrawable for one year after reorganization and subject to withdrawal fees of six per cent on withdrawal made within the second year after reorganization; four per cent in the third year, and two per cent thereafter prior to maturity of shares was illegal and in violation of the statutes and constitutions of Missouri and the United States in that it denied the holders of stock the right of withdrawal and that such right was a vested right, and (b) that the

allowance of a credit to borrowing members in repayment or reduc-tion of their loans of the value of their stock as determined by the appraisal and audit was discriminatory as against nonborrowing shareholders and a preference. And (2) in entering such decree without providing for payment in cash, or the giving of ample security by the association for the payment in cash, to dissenting shareholders of the actual cash value of their stock.

The respondent, Wagner, took charge of the defendant building and loan association under the Act of 1931, pages 141 to 165, in-clusive, which act repealed and re-enacted Chapter 35, Revised Stat-utes of Missouri 1929, containing Sections 5576 to 5628, inclusive These sections provided for creation of the State Bureau of Building and Loan Supervision and a supervisor of building and loan as-sociations who shall have charge of the laws relating to mutual saving fund building and loan associations as provided in the article of the corporation laws relative to such associations, and shall also have charge of laws relating to building and loan associations re-organized and existing under and by virtue of the laws of Missouri. It would serve no useful purpose to summerize all the sections of this article, as only Sections 5626, 5627 and 5628, relate to when the supervisor has or can take charge of such an association. We can summarize these three sections as follows: The supervisor is empowered to take over and conduct and manage the affairs of a building and loan association and take possession of its assets in the event illegal, improper or unsound practices are not corrected, or upon the request of the board of directors of such an association. When the supervisor shall take such possession and charge of the affairs and assets of an association, the same shall be construed as the possession of the State of Missouri, and the property shall then be *in custodia legis*. Full and adequate powers are given the super-visor when he does so take charge, to protect the interests of all the stockholders and determine their respective rights and liabilities. The supervisor may at any time after he takes charge of the assets and affairs of an association, institute proceedings in the circuit court in the city or county in which the association has its principal office and have himself appointed temporary receiver until it is de-termined whether or not such association can resume business, or have himself appointed receiver for the purpose of winding up its affairs; and such court shall upon application appoint the supervisor as receiver. The supervisor acting as receiver has full and adequate powers to straighten out the affairs of a distressed association; dur-ing his administration of its affairs he has all the powers, duties and authorities of the board of directors, subject, however, to the order of the court in the event of the sale of any of its assets. The court upon the application of the supervisor shall have the right to remove the officers and directors of the association and to call a

meeting of the stockholders for the election of new directors. The law directs the supervisor to attempt a reorganization and he may submit to the court any general plan of reorganization of such association. The court may submit such plan to the stockholders for approval or disapproval, but no such action on part of the stockholders shall be binding on the court, but be advisory only, and the court may approve or reject such plan of reorganization.

■ Building and loan associations are *quasi*-public financial institutions, and for the protection of them the State of Missouri has by the Act of 1931, provided special inquisitorial, supervisory and regulating laws which are specific, adequate, complete and therefore exclusive. [State ex rel. Moberly v. Sevier, Judge, 337 Mo. 1174, 88 S. W. (2d) 154.] Building and loan associations, like banks, trust companies, insurance companies and railroads are *quasi*-public corporations as to which the State may exercise its police power and may assert its sovereign rights of regulation and control in the preservation and furtherance of public well-being. [Sec. 5, of Art. XII, of the Constitution of Missouri; Hackler v. Farm & Home Savings & Loan Association of Missouri, 6 Fed. Supp. 610; Koch v. Missouri-Lincoln Trust Company (Mo.), 181 S. W. 44; State ex rel. Missouri State Life Insurance Co. v. Hall, 330 Mo. 1107, 52 S. W. (2d) 174.]

''The success or failure of such institution affects the stability of business and the financial interests of the entire community, and it became necessary that they be strictly supervised and controlled for the protection of depositors and the welfare of the public. The intimate relation of the building and loan associations to the welfare of the public has heretofore been quite generally recognized, but never has it been so clearly demonstrated as it has within the past few months. Recognizing the character of such institutions, and the purpose they seek to serve, the Legislature of this State has enacted statutes, governing, controlling and regulating them, and, in language that cannot be misunderstood, has wisely made provision for their supervision at all times, and under all circumstances and conditions. . . .

''We cannot disregard the clear and manifest purpose of the legislative branch of the government to fully protect and safeguard the interests of depositors and others in these *quasi*-public institutions. Confidence is essential to their stability and maintenance, and that has been encouraged and promoted by supervision and control under state authority.'' [State ex rel. Bettman v. Court of Common Pleas (Ohio), 178 N. E. 238.]

By the Act of 1931, the Legislature did not attempt to prescribe any particular pattern to which a reorganization must conform. The Legislature recognized the power of a court of equity to approve a fair and equitable reorganization and that the interest of the share-

holders and of the public could and would be adequately and properly safeguarded in the proceeding contemplated and provided for by the statute, which was to be instituted by the State itself.

Under Section 5626, of the Laws of 1931, it is not essential that the association be insolvent, before the supervisor may take charge of it, but he may when "it shall appear to the supervisor that it is unsafe or inexpedient for any such association to continue to transact business." There was no evidence that at the time Wagner was appointed receiver of the defendant association that it was insolvent, in fact he testified that it was solvent. A building and loan association is insolvent when it cannot pay its general creditor and pay its shareholders in full. However, Mr. Wagner did testify that the condition of the defendant was such that it could not continue in business without it being reorganized.

It is to be noted that Section 5627, supra, provides that "The supervisor may submit to the court any general plan of reorganization of such association or merger or consolidation of such association with another association, and the court may submit such plan to the stockholders for approval or disapproval, but no such action of the stockholders shall be binding on the court but be advisory only, and the court may approve or reject such plan of reorganization, merger or consolidation."

Under the terms of the plan and decrees approving and giving effect thereto, no assets of the association, either tangible or intangible, were destroyed or taken away. The assets were merely placed in two groups. The association retained title to the assets in group A and functioned in respect thereto under the laws of Missouri governing operating building and loan associations. However, the value of the stock in group A was sixty-five per cent of its book value on the date of June 6, 1932. The association held the naked legal title to the assets in group B in trust for the benefit of and for distribution *pro rata* to all the then shareholders of the association, subject to the provisions of the guaranty that the association recover and realize from the assets in group A the scheduled values thereof as reported to the court on March 17, 1933, in consummating reorganization.

The appellant contends the right of withdrawal is a vested right under the contract between them and the association, and that any change in the right to withdrawal against the stockholder was an impairment of the right of contract in violation of Section 15, Article 2, of the Constitution of Missouri. The appellants rely upon the case of Fisher v. Patton, 134 Mo. 32, 33 S. W. 451, for the authority that the contract between a stockholder and an association is a vested right, and such right cannot be abridged by a subsequently enacted law of the Legislature. In that case the directors undertook to close out a series of its shares before maturity in violation

of a by-law in force when the plaintiff became a member of the association, and we held that even if a subsequent act of the Legislature permitted the board of directors to cancel out a series of shares, it could not do so if it affected shares that were in existence before the act of the Legislature became effective. That case does not discuss the right of withdrawal, nor was there any reference that that association was embarrassed financially. We do not see where it is in point; the police powers of the State were not in issue in that case. The appellants contend that under the by-laws of the defendant association and Section 5604, Revised Statutes 1929, by giving thirty days' notice and with a penalty of two per cent, they would be entitled to withdraw their shares of stock; while under the plan of reorganization they would not withdraw their stock during the first year, and if they did during the second year they would lose six per cent; four per cent during the third year, and two per cent thereafter.

There was testimony to the effect that this prohibition upon withdrawals for one year after reorganization and provision for graduated withdrawal fees thereafter prior to maturity, was reasonable and necessary in order that the association could function normally. This was so for the reason that such charges were found necessary to prevent the filing of withdrawal notices in amounts that would prevent the flow of new money into the association and when it failed to receive new money through an increased membership it would become self-liquidating and fail to render the service for which it was established.

There was no evidence to the effect that any of these appellants had given notice of withdrawal prior to the time the association was placed in the hands of the receiver. If there had been, that fact would not have changed their relations with the defendant association from that of a stockholder to that of a creditor. In the case of Hohenshell v. Savings & Loan Association, 140 Mo. 566, 1. c. 579, 41 S. W. 948, we said:

"Our conclusion is that appellants' relation of stockholder to the association was not changed to that of creditor by reason of his withdrawal, and that he is not entitled to priority in the order of payment over other stockholders of the association holding unpaid stock."

In the case of Fornataro v. Atlantic Coast Building & Loan Association, 163 Atl. 240, 1. c. 244, the Supreme Court of New Jersey said:

"It seems to me that the legislative intent is apparent, and no vested right of plaintiffs are violated by giving to the 1932 amendment a retrospective construction. It also seems quite apparent that all the Legislature ever guaranteed to plaintiffs as shareholders was that they should have the right of withdrawal and that they should,

on withdrawal, be paid sums that were certain, and not that they should be paid at a certain fixed time irrespective of any change of conditions that might occur in the financial world between the time of their initial membership and the time of their attempt to withdraw.

"The Legislature, in 1925, gave the shareholder a right to bring suit on a withdrawal notice at the expiration of six months after notice given and left it to the courts to control the execution, and plaintiffs knew that, if in the judgment of the Legislature the time within which suit could be brought should be changed, there was reserved in the Legislature the power to make the change.

"They (plaintiffs) also knew that the purpose of all legislation would be to conserve the mutual interest of all shareholders, the old and the new, and that all legislation, therefore, would, as to some shareholders, be from the retrospective aspect.

"What the Legislature did by the Amendment of 1932, it seems to me, was to bolster up the ultimate result; i. e., assured more nearly that there would be an ultimate payment of withdrawals without jeopardizing the very life of the association, and thereby secured to the member the payment of his withdrawal in such manner that the payment thereof might not destroy mutuality and equal participation in assets and losses.

"The reservation in the Legislature to repeal and alter existing statutes (the police power) has received the sanction of the courts even when it affected vested rights.

"In Union Dry Goods Co. v. Georgia Pub. Serv. Corp., 248 U. S. 372, 39 Sup. Ct. 117, 119, 63 L. Ed. 309, 9 A. L. R. 1420, Mr. Justice CLARKE said: ' "It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the state from" properly exercising its police powers "for the general good of the public, though contracts previously entered into between individuals may thereby be effected;" ' and, after citing opinions, he further said: 'These decisions, a few from many to like effect, should suffice to satisfy the most skeptical or belated investigator that the right of private contract must yield to the exigencies of the public welfare when determined in an appropriate manner by the authority of the state.' "

We think the case at bar is very similar to the facts in the case of Doty v. Love, 79 L. Ed. 1303, l. c. 1308. In that case the People's Bank & Trust Company of Tupelo, Mississippi, closed its doors on December 24, 1930. In the fall of 1932, after about two years of liquidation by the superintendent of banks, a movement was started by a large number of depositors to set the bank on its feet. For help in that endeavor, they had recourse to methods made available by a statute effective May, 1932. The Supreme Court of the United States in passing on that case said:

"If we look to the surface of the statute and no further, there is not even colorable basis for the argument that the Constitution is infringed. All that the statute does upon its face is to change the method of liquidation. The assets of the business are to be devoted without impairment or diversion to the payment of the debts. As to this the statute is explicit. [Act of 1932, Chap. 251, Art. 3.] At the discretion of the Court of Chancery a reopened bank is to take the place of the state superintendent for the purpose of gathering in the assets and the substitution may not be made unless the court is satisfied that the reopened bank is solvent and able to satisfy the debts to be assumed. Payment of the creditors is still the end to be attained and resumption of business a means and nothing more. . . . The Constitution of the United States does not confer upon the depositors a vested right to liquidation at the hands of a state official. [Gibbes v. Zimmerman, 290 U. S. 326, 332, 78 L. Ed. 342, 347, 54 Sup. Ct. 140.]

"The argument will not hold that the necessary operation of the statute is to subject dissenting creditors, who may be as many as one-fourth, to the will or the whim of the assenting there-fourths. The creditors favoring reorganization, though they be ninety-nine per cent, have no power under the statute to impose their will on a minority. They may advise and recommend, but they are powerless to coerce. Their recommendation will be ineffective unless approved by the superintendent. Even if approved by him, it will be ineffective. unless the court after a hearing shall find it to be wise and just. Upon such a hearing every objection to the plan in point of law or policy may be submitted and considered. The decree when made by the chancellor will represent his own unfettered judgment. The judicial power has not been delegated to nonjudicial agencies or to persons or factions interested in the event. Like statutes have been upheld by the courts of other states. . . .

"The argument is made that some of the assets of the old bank are placed at the risk of the business of the new one. All this was done for the protection of existing creditors. The finding is that collections are made more promptly and readily by a going concern than by one in liquidation. [Cf. Christensen v. Merchants' & M. Bank, 168 Miss. 43, 57, 150 So. 875.] For illustration, a live bank is much more efficient than a closed one in selling parcels of real estate or in carrying them while unsold at profitable rentals."

While we think the right of withdrawal is a privilege instead of a vested right, yet if it were a vested right it must give away to the police powers of the State. "Contracts must be understood as made in reference to the possible exercise of the rightful authority of the Government, and no obligation of a contract can extend to defeat the legitimate governmental authority." [Louisville & Nash-

ville Railroad Co. v. Mottley, 219 U. S. 467, l. c. 482.] We think that the restrictions on withdrawal were reasonable and should be upheld.

The appraisal and audit showed that the value of the share was 84.3 per cent of the book value on June 6, 1932. Under the plan of reorganization the borrowing members were credited so that their loan was reduced to the actual value (that is 84.3 per cent of the original amount). The appellants claim this is giving the borrowing members a preference over the nonborrowing members.

When a member of a building and loan association borrows money from the association he does not repay the association the actual amount he borrows, but the debt is satisfied when he pays the difference between the withdrawal value of his shares and the face of his note. Mr. Wagner testified that such a provision of allowance of the established value of pledged shares to a borrowing member making repayment of his loan was necessary in order that some shareholders be enabled to continue their loans; and that such was to the advantage of the nonborrowing shareholders, because it would result in a great many loans being saved from foreclosure; that a great many borrowers were unable to meet monthly payments provided for in their original loans, even though they had made substantial payments on the pledged stock, and that such a provision was a practical, logical, sensible and humane adjustment out of present day conditions in interest of all shareholders both borrowing and nonborrowing.

If the board of directors of a going association have the power to credit a borrowing member the amount of the withdrawal value of his pledged shares, then we see no reason why a court of equity in acting upon a plan of reorganization with a view to the preservation of such an institution in the protection of the public interest may not provide for the allowance to a borrowing member of a stock credit in the amount of his stock value as found by the court. Section 5627, supra, gives the supervisor, acting as receiver, the power, under order of the court, to "compromise and settle with the borrowers of such association the amount of credit to be allowed any loans on account of the value of the stock held as collateral to such loan." If such a credit could be made by the court in administering the affairs of the association in either a temporary or permanent receivership, then we see no reason why it could not be allowed in effecting a reorganization.

The Supreme Court of the United States in the case of Doty v. Love, supra, l. c. 1310, in approving the release of certain stockholders of double liability under a statute of Mississippi, where the stockholders purchased a specified amount of new capital stock in the reorganized bank, said:

"In such circumstances it is idle to speak of the release of liability as a gift or a sacrifice of valuable assets. The release was none

of that, but a compromise of a liability of uncertain value upon terms beneficial to the creditors. So the trier of the facts has found. The title to the extinguished cause of action was not in the depositors, but in the superintendent or the bank. If there had been no plan to reorganize, the superintendent like a receiver might have compromised the cause of action and released it with the approval of the court. His authority was no less because the release was incidental to a project to rehabilitate a business for the good of all concerned. The jurisdiction of the Court of Chancery to give approval to a settlement by a receiver or other officer did not have its genesis in the Act of 1932 or in the procedure there prescribed. It existed in like measure when the liquidation of this bank was begun in 1930 and for many years before. Depositors were chargeable with notice of that power and became subject to its exercise in making their deposits.''

All members of a building and loan association must participate equally in the profits and bear the losses, if any, in the same proportion. [Bertche v. Loan & Ins. Assn., 147 Mo. 343, 48 S. W. 954; Schell v. Equitable Loan & Inv. Co., 150 Mo. 103, 51 S. W. 406.] We think that is exactly what the plan of reorganization does in the case at bar. Moreover, the record fails to show if the appellants are borrowing or nonborrowing members, and therefore they fail to show they have been damaged by that feature of the plan. [Doty v. Love, supra.] We rule this point against the appellants.

The appellants contend that as they did not consent to the plan of reorganization, they are entitled to be paid in cash for their stock or be given ample security for the payment in cash to them for the actual cash value of their stock as of the effective date of the reorganization.

In the case at bar we are not dealing with the reorganization of a purely private corporation, but we are considering a *quasi*-public financial institution. Therefore, the case of In re Doe Run Lead Company, 283 Mo. 646, 223 S. W. 600, and Section 5482, Revised Statutes 1929, are not in point.

The Supreme Court of the United States in the case of Northern Pacific Railway v. Boyd, 228 U. S. 482, 1. c. 508, 57 L. Ed. 931, said:

''This conclusion does not, as claimed, require the impossible and make it necessary to pay an unsecured creditor in cash as a condition of the stockholders' retaining an interest in the reorganized company. His interest can be preserved by the issuance, on equitable terms, of income bonds or preferred stock.''

The United States Court of Appeals for the Eighth Circuit in the case of Phipps v. Chicago, Rock Island & Pacific Railway Co., 284 Fed. 945, 1. c. 949; said:

''Every unsecured creditor then and thereafter was a *cestui que trust* of the court, entitled to a like interest in the property in

proportion to the amount of his claim, as every other such creditor and every stockholder was a *cestui que trust* of the court, entitled to a like interest in the property in proportion to the amount of his stock to that of every other stockholder. When that court had so operated the property, and by its decree had so distributed either the property itself or its proceeds, it had faithfully executed its trust and rendered the right decree. Nor was it indispensable to such a just result, or to a lawful decree, that the interest or shares of any of the *cestui que trust* should be secured or paid to him or it in cash. It was within the power and the judicial discretion of the court to adjudge and secure that interest or share to him or it in the stock, bonds or other securities of the reorganized company. . . ."

We hold that the appellants are not entitled to be paid in cash for their stock, or that they should be given security for its payment. Under the plan of the reorganization they were given the proportionate share in the assets of the defendant association, and that is all they are entitled to.

We conclude that the plan of reorganization is just and feasible and the decree of the circuit court should be affirmed. It is so ordered. All concur.