BRAZOSPORT SAVINGS AND LOAN AS-SOCIATION et al., Appellants,

v.

Jimmy PHILLIPS et al. and J. M. Falkner, Banking Commissioner of Texas, Appellee.

No. 10715.

Court of Civil Appeals of Texas.

Austin.

June 24, 1959.

Rehearing Denied Aug. 5, 1959.

R. W. Lindsey, Rosenberg, Pearson, Scherer & Roberts, Richmond, McKay & Avery, Austin, for appellants.

J. P. Bryan, Lake Jackson, Looney, Clark, Mathews, Thomas & Harris, Mary Joe Carroll, Austin, for Jimmy Phillips and others.

Will Wilson, Atty. Gen., C. K. Richards, Asst. Atty. Gen., for J. M. Falkner, Banking Com'r.

ARCHER, Chief Justice.

This suit was filed seeking injunctive and declaratory judgment relief by appellants against appellees on account of the proceedings before and action of the State Banking Commissioner in granting a charter, franchise and certificate of authority to do business to American Savings and Loan Association, pursuant to application of appellees, the organizers and directors thereof, and sought to set aside the articles of incorporation and to enjoin the incorporators from doing business under the charter and alternatively sought a declaratory judgment to the effect that the Commissioner lacked authority to issue the charter.

Appellants contend that the gist of the complaint is that the Commissioner (in an adversary proceeding) wrongfully granted the charter to American contrary to the Commissioner's own rules, the law and the evidence which will permit American to unlawfully and illegally engage in a savings and loan business with resulting injury and damage to appellants.

The Banking Commissioner and the individual defendants severally filed pleas to the jurisdiction of the court which were sustained and the court dismissed the case and it is from this action that the appeal is taken.

The appeal is based on eight points which are to the effect that the trial court erred in sustaining the pleas in abatement to the jurisdiction of the court filed by the Commissioner and by Phillips et al; in dismissing appellants' suit on grounds of lack of jurisdiction; in depriving appellants of their rights to a declaratory judgment; in holding that appellants' suit was a collateral attack, over which the court had no jurisdiction; in failing to assume jurisdiction because appellants as the holders of lawful franchises to engage in savings and loan businesses, are real and substantial parties at interest and entitled to the protection from illegal competition; in failing to assume jurisdiction to enforce the constitutional rights of appellants; and finally in construing Art. 881a–1 et seq. and related provisions so as to deny to appellants any right of judicial review of the action of the Commissioner in granting a charter to do business to appellees and depriving appellants of their constitutional rights under the Due Process Clauses of the Constitutions of the United States and of Texas. U.S.Const. Amend. 14; Vernon's Ann.St.Const. art. 1, § 19.

Appellees Phillips et al. have counterpoints to the effect that appellants had no standing to contest the validity of the Articles of Incorporation of American Savings and Loan Association and no right to review, or maintain a suit to enjoin the actions of the Banking Commissioner in the exercise of discretionary functions and that the Declaratory Judgment Act, Vernon's Ann.Civ.St. art. 2524–1 et seq., is procedural in nature and does not afford a substantive right of action, and not available to appellants and that the action of the trial court in sustaining the pleas in abatement did not violate any property right of the appellants.

Appellee, Banking Commissioner, in a counterpoint says that the trial court did

not err in sustaining his plea in abatement because as a matter of law the allegations in appellants' petition constitute an attempt by third parties to collaterally attack the validity of the charter theretofore granted to American Savings and Loan Association under the provisions of Article 881a–2, Vernon's Ann.Civ.St., and the trial court was without jurisdiction to determine the cause of action alleged by appellants.

On January 23, 1959, the Banking Commissioner granted to American Savings and Loan Association the charter herein questioned, and on February 9, 1959, Brazosport Savings and Loan Association, Fort Bend Savings and Loan Association, and Gulf Coast Savings and Loan Association filed this suit against Jimmy Phillips and eleven others, naming them, composing the officers and directors of American Savings and Loan Association, American Savings and Loan Association of Lake Jackson, Texas and J. M. Falkner, Banking Commissioner of Texas, alleging that plaintiffs were building and loan associations within the area to be served by appellee American Savings and Loan Association and were entitled to conduct their businesses free of unlawful competition which would result if American were permitted to engage in the savings and loan business under the authority granted by the Commissioner, and that the actions of the Commissioner in issuing the charter under the provisions of Articles 881a–2 and 881a–4 were wholly illegal and void, both under the law and the Rules and Regulations promulgated by the Finance Commission of Texas and the Banking Commission pursuant to the authority granted in Article 342–114, V.A.C.S., because the Commissioner had failed to follow the procedures required by Article 881a–2.

The Rules and Regulations for Building and Loan Associations [1] require application and articles to be accompanied by certain data, properly verified, "sufficiently detailed and comprehensive to enable the Commissioner to pass upon the proposed charter" as to (1) character and fitness, etc.; (2) promotion of public convenience and advantage, (including probability of insurance of accounts, maintenance of independent ground floor quarters, full time qualified management, and adequacy of initial capital and surplus); (3) reasonable promise of adequate support for the association by the population of the neighborhood and surrounding country.

Appellants pled that appellees Phillips et al. failed to file supporting data with the application but subsequently amended this application, and that the notary who acted was one of the proposed stockholders and that such instruments were illegal but that the Commissioner acted thereon; that in acting on the application the Commissioner did not afford appellants an opportunity to offer evidence, and that the Commissioner acted in an arbitrary, capricious, unreasonable and unlawful manner and in violation of appellants' rights to Due Process.

Appellants take the position that nothing in Art. 881a–3, which provides only for a review by mandamus in the case of a rejected application, and that nothing in the statute indicates an affirmative legislative intent to deprive any person of a right to judicial relief from illegal or arbitrary action and that courts affirm such right to judicial relief when the statutes are silent.

The prayer for relief in appellants petition reads:

"Premises Considered, plaintiffs pray that defendants be cited to appear and answer herein; that upon final hearing herein, the Court enter its judgment finding and declaring the action of the Banking Commissioner of Texas in approving the articles of association and in granting a charter to and issuing a certificate of authority to do business

---

1. Subject of the controversy in Falkner v. Southwestern Savings & Loan Ass'n of Houston, Tex.Civ.App., 320 S.W.2d 164.

to American Savings and Loan Association to be illegal and void, ab initio; that the Court declare such charter and certificate to do business to be unlawful and void, and that the Court permanently enjoin defendants, Jimmy Phillips, et al., their agents, successors and assigns, and the said defendant association, from doing business or attempting to do business by authority of such charter, or by such approval by the Commissioner, or by authority of such certificate of authority to do business, and likewise permanently enjoin the defendant Commissioner from permitting defendant applicant and the individual defendants to do business by virtue of such certificate and direct him to cancel the same upon his records, and permanently enjoin him from granting any additional certificate to do business to said parties by virtue of such application under the same conditions; and plaintiffs pray for their costs, and such other and further relief to which they may be entitled.

"In The Alternative, plaintiffs ask that the Court grant and enter its Declaratory Judgment as hereinabove requested, together with such other relief by declaratory judgment or ·otherwise, to which plaintiffs may be entitled."

At a pretrial hearing, and without the introduction of any evidence, either oral or written, the trial court sustained the pleas in abatement upon the ground that the allegations and prayer contained in the first amended original petition constituted an attempt by third parties to collaterally attack the validity of the charter granted to American Savings and Loan Association on January 23, 1959, by J. M. Falkner, Banking Commissioner of Texas, under the provisions of Article 881a–2, V.A.C.S., and therefore the trial court was without jurisdiction to hear and determine the cause of action alleged in appellants' first amended original petition, and ordered the suit dismissed as to all parties defendant, to

which action the appellants excepted and gave notice of appeal.

The appellee, Commissioner, contends that suit, under the cause of action and prayer, constitutes a collateral attack by third parties upon the validity of the charter and that under the law the trial court was without jurisdiction to determine the merits of the case, while appellants contend that their suit was filed as an appeal from the action of the Commissioner in granting the charter and that they did not have an adequate remedy at law and sought equitable injunctive relief, and in the alternative that a proceeding under the Declaratory Judgment Act is authorized as a direct attack upon the validity of the charter.

Article 881a–2, V.A.C.S., is as follows:

"When any persons shall file a proposed charter or articles of agreement as is elsewhere herein provided, if it appears to the satisfaction of the Banking Commissioner of Texas that the minimum capital required has been paid in cash into the treasury of the association upon subscriptions for shares, the Banking Commissioner of Texas shall ascertain from the best sources at his command, and by such investigation as he may deem necessary, the expense of such investigation to be paid by the incorporators, whether the character, responsibility and general fitness of the persons named in the articles of incorporation are such as to command confidence and warrant belief that the business of the proposed building and loan association will be honestly and efficiently conducted in accordance with the intent and purpose of this Act, and whether the public convenience and advantage will be promoted by allowing such proposed building and loan association to be incorporated and engaged in business, and whether the population in the neighborhood of such place and in the surrounding country affords a reasonable promise of adequate sup-

port for the proposed building and loan association. If it shall be satisfied concerning the several matters specified, the Banking Commissioner of Texas shall issue under his official seal a certificate reciting in substance the filing in its office of the articles of incorporation; that such articles conform to all requirements of the law, and that they have been approved, whereupon the persons named in the articles of association, their associates and successors, shall become a corporate body for the period for which they were organized, and shall exercise such powers as are herein granted, and such other powers as are necessary to enable such association to carry out the purpose of its organization, not inconsistent with the provisions of this Act, but before such association shall proceed to do business it shall adopt and have approved by the Banking Commissioner of Texas by-laws for the regulation and management of its business, not inconsistent with the provisions herein provided."

Article 881a–3, V.A.C.S., reads as follows:

"If the Banking Commissioner of Texas shall not be satisfied by such examination that it is expedient and desirable to permit such proposed building and loan association to engage in business, it shall endorse upon each copy of the articles of incorporation the word 'refused', with the date of such endorsement, together with the reason for such refusal, and shall forthwith return one copy of such articles of incorporation to the proposed incorporators from whom the same was received, and such refusal shall be conclusive unless the incorporators within thirty days of the issuance of such notice of refusal shall apply to the District Court of Travis County, Texas (which court shall have jurisdiction of such case) for a writ of mandamus to compel the filing of such charter and granting of a permit to do busi-

ness. Appeals shall lie from the decree of the District Court in the same manner as appeals in other mandamus cases are allowable and taken in this State."

It is to be observed that the only statutory provision for an appeal from an order of the Commissioner in granting or refusing a charter is in Article 881a–3, providing when an application for approval of an application is refused, that the incorporators have, within thirty days of such refusal, to apply to the District Court for a writ of mandamus to compel the granting of such charter. This provision for review is not applicable in this case because the charter was granted.

 We do not believe that the suit is in the nature of a statutory appeal from the action of the Commissioner in approving the charter, but does constitute a collateral attack upon the validity of the charter, and as such is not within the general rule governing the procedure to declare charters to be void.

In State v. Dyer, 145 Tex. 586, 200 S.W. 2d 813, 815, our Supreme Court held:

"We refer briefly to some of the general rules as to dissolution of corporations. Since a corporation is a creature of the state by which it is chartered, the right to dissolve the corporation without its consent belongs exclusively to the state. (Citing authorities.) Whether the franchise of a corporation is to be forfeited depends upon the will of the body that created it. The forfeiture or the dissolution of the corporation cannot be claimed in a collateral proceeding merely because a ground of forfeiture may exist, and ordinarily the forfeiture or dissolution must be declared in a judicial proceeding instituted for that purpose. (Citing authorities.) Such suit, in the absence of an express statute to the contrary, can be instituted only by the State."

The case of City of Amarillo v. Hancock, 150 Tex. 231, 239 S.W.2d 788, 790,

the Supreme Court discusses the right of appeal from administrative actions and stated the general rule to be:

"When the legislature creates an administrative agency, the legislature may prescribe rules and regulations governing the administrative body and the method by which the rights determined by such body shall be enforced. Judicial review of administrative action may be specifically provided, * * or specifically denied by the legislature, but even where judicial review is specifically provided it will be denied if the legislature requires the court to substitute itself for the administrative body and perform purely administrative acts. * * * But all other decisions of such an administrative body which do not affect vested property rights or otherwise violate some constitutional provision are valid, and the mere fact that the legislature has denied judicial review does not invalidate them. * * * "

■ The appellants do not have a vested property right in the charter and certificate granted by the Commissioner to American, such property right belongs exclusively to American's stockholders and can be divested only for violation of the laws of Texas in an action brought through the Attorney General at the request of the Banking Commissioner.

Article 342–115 (Texas Banking Act of 1943) provides in part that the "findings and determination [of the State Banking Board] shall be subject to review and may be set aside by a court of competent jurisdiction," and that the orders of such board may be appealed to a court of competent jurisdiction.

It is therefore to be noted that Article 881a–2, in providing for a limited appeal, is unlike Article 342–113, in providing for an appeal.

■ With reference to the relief sought by the Declaratory Judgment Act, invoked by appellants directly attacking the validity of the act of the Commissioner in granting the charter, it is again to be observed that the relief sought is identical as sought under the original cause of action and although relief sought under the Declaratory Judgment Act is cumulative of other remedies, there must be a justiciable controversy which can be finally adjudicated by the court entering such a judgment.

Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837; City of Gladewater v. Pelphrey, Tex.Civ.App., 309 S.W.2d 472, er. ref., N.R.E.

■ A suit for a declaratory judgment cannot be maintained as a direct appeal from the action of the Commissioner in granting the charter in this instance.

Alamo Express, Inc. v. Union City Transfer Co., Tex., 309 S.W.2d 815.

Appellants cite Jud v. City of San Antonio, 143 Tex. 303, 184 S.W.2d 821, 823, as supporting their position in invoking the Declaratory Judgment Act.

In the Jud case the court stated that the defendants had proceeded on the theory that they could establish want of jurisdiction in the court by showing upon a hearing on the plea that certain fact allegations were untrue and stated:

"They did not stand upon the proposition in the trial court that, as a matter of law on the face of the pleadings, the Court had no potential jurisdiction to hear the case. Their plea contemplated a hearing on the facts, and upon being granted that hearing they placed upon the witness stand one of the members of the Pension Board who testified, under the questioning of their attorney, to the facts in connection with the hearing on plaintiff's application for a pension. In substance and effect his testimony was that the Board did not act arbitrarily or maliciously, but that it accorded the plaintiff a fair hearing and based its order

denying the application upon its conclusion that, under the facts plaintiff should not be granted a pension. They argue here that 'in view of the allegations of the petition, and the evidence introduced on the hearing on the plea to the jursdiction' the Court had no jurisdiction to hear the case."

In the instant case without the introduction of any evidence either oral or written the trial court sustained the pleas in abatement, on the proposition that as a matter of law on the face of the pleadings, the court had no potential jurisdiction to hear the case upon its merits, and followed the rule of law that in such cases the allegations contained in the petition are to be considered as true.

The merits of this case are not before this Court in this appeal.

■ We believe that since Article 881a–3 provides that right of review is available to those whose charter applications have been refused, and since it specifies the conditions and procedure for the review it excludes all other classes of persons and all other forms of review and remedies. State v. Mauritz-Wells Co., 141 Tex. 634, 175 S.W.2d 238.

■ We believe that only the State can question the authority of a corporation to act, and the Constitution confers express power upon the Attorney General to take such action in the courts as may be proper to prevent any private corporation from exercising any power, not authorized by law. Art. IV, sec. 22, Vernon's Ann.St. Southwestern Gas & Electric Co. v. City of Gilmer, D.C., 123 F.Sup. 11, affirmed 5 Cir., 224 F.2d 794; State v. Dyer, supra.

There is no question but that a building and loan association is a private corporation. Frank Co. v. Latham, 145 Tex. 30, 193 S.W.2d 671.

Appellee American Savings and Loan Association has become a corporate body and authorized to do business in Texas, and the purpose of appellants' suit is to set aside that right and authority, and such can only be done through a suit brought by the Attorney General.

No useful purpose could be had by unduly extending this opinion by a further discussion of the numerous cases and authorities cited by both appellants and appellees in excellent briefs.

The judgment of the Trial Court is affirmed.

Affirmed.

HUGHES, Justice (dissenting).

The parties concede and it must be borne in mind that in disposing of this appeal the allegations of appellants' petition must be taken as true.

Many irregularities regarding the proceedings in which the American Savings and Loan Association, an appellee, was granted a charter, franchise and certificate of authority to do business by the State Banking Commissioner are alleged. I will, however, quote only the allegations which relate to the duty of the Commissioner under Art. 881a–2, V.A.C.S., to ascertain "whether the public convenience and advantage will be promoted by allowing such proposed building and loan association to be incorporated and engaged in business, and whether the population in the neighborhood of such place and in the surrounding country affords a reasonable promise of adequate support for the proposed building and loan association" for if these allegations do not entitle appellants access to the courts then the other alleged irregularities could not possibly do so.

"Plaintiff, Brazosport Savings and Loan Association is duly chartered under the laws of the State of Texas as a savings and loan association, and has its principal place of business at Freeport, Brazoria County, Texas, with W. C. McLendon as its president; plaintiff, Fort Bend Savings and Loan Association is duly chartered under the

laws of the State of Texas as a savings and loan association, and has its principal place of business at Rosenberg, Fort Bend County, Texas, with R. J. Davis as its executive vice-president; plaintiff, Gulf Coast Savings and Loan Association is duly chartered under the laws of the State of Texas as a savings and loan association, and has its principal place of business at Richmond, Fort Bend County, Texas, with Glenn Birdwell as its president; * *

"Plaintiffs and each of them are possessed of charters, permits to do business and franchise rights to engage in and operate savings and loan (or building and loan) associations which charters, permits and franchises have been heretofore lawfully granted to them. Plaintiffs, pursuant to their authority so to do, have heretofore at all material times, and are now operating and doing business by virtue of their charter and franchise rights, and have and hold valuable property rights, interests and investments in their respective businesses.

"Plaintiffs actively engage in the savings and loan business within the territory and area authorized by law, soliciting business, and holding themselves out to serve, and serving the public. Plaintiffs are, and at all times material hereto have been ready, willing and able to serve the public, meeting all public needs, and so operating as to fully meet and satisfy any and all reasonable requirements of public convenience and advantage insofar as savings and loan or building and loan associations are concerned in the area here involved. Plaintiffs' businesses are affected by public use, being of public interest, and conducted for the public welfare and benefit.

"Plaintiffs, as lawful owners and holders of such charters and franchises, have invested large sums of money in their businesses, their plants and facilities, all of which as well as their charters and franchises, constitute valuable property rights and rights to property, of value in excess of many thousands of dollars and are entitled to hold and operate such free of the unlawful and illegal competition and action hereinafter set forth, which illegal competition will result in irreparable injury and damage to plaintiffs and to the general public, unless the relief herein prayed for be granted. * * *

"Defendants, Jimmy Phillips, et al., unknown to plaintiffs, caused to be prepared and filed with the Commissioner, on or about September 26, 1958, certain Articles of Association and Application for Charter for American Savings and Loan Association-Lake Jackson, Texas, which was received by the Commissioner and held by him without fixing a hearing thereon within ten days, as required by Rule 2.1 of the Rules and Regulations for Building and Loan Associations, promulgated by the Building and Loan Section of the Finance Commission of Texas and the Banking Commissioner of Texas, which at all material times were in force and effect. Thereafter defendants Phillips et al. superseded and amended their Articles and Application by instruments dated October 27, 1958, and filed these instruments with the Commissioner on or about October 31st, 1958.

"(2) By virtue of such application the defendant directors and applicant proposed to seek authority to operate a savings and loan association business with main offices at Lake Jackson in Brazoria County, Texas, doing business within a 50-mile radius of that place, in competition with plaintiffs, each of whom is entitled to operate and serve that same area and territory in whole or in part, it being the specific plan and proposal of defendant directors and the applicant to cause plaintiffs to lose their proportionate share of savings and loan business done by them, de-

fendants proposing to appropriate the same to their own use and benefit. * *

"The applicant and defendants completely failed to submit and present, at such hearing, substantial evidence from which the Commissioner could make the determinations required by law and such Rule 2.1[1] and from which he could lawfully find and conclude that such application and evidence satisfied the elements required by such Rule 2.1 and Art. 881a–2, V.A.C.S. of Texas.

"(c) Based upon the evidence adduced at such hearing and there presented to the Commissioner, defendants Jimmy Phillips, et al., and the applicant, wholly failed to meet and satisfy the proof required by law as to the several elements and considerations governing the grant of a charter to do a savings and loan association business, and the action of the Commissioner in approving said application and granting such charter, as he did do on January 23, 1959 was arbitrary, capricious, unreasonable and unlawful.

"At all material times, the credible evidence is that the public convenience and advantage will not be promoted by the granting of a charter for this association, and, on the contrary, public convenience and advantage will be prejudiced and harmed. Further, and in this regard, plaintiffs say that during the past twelve (12) months the defend-

ant Commissioner has now granted a total of three new savings and loan association charters for Brazoria County, Texas. This action is wholly unjustified, has never been practiced in any other comparable county in the State, and, as regards the chartering of the defendant association, this has been done at a time when two others have been so recently chartered as to permit of no reasonable opportunity for them to enter business, or for any fair appraisal of the public interests to be had or evaluation of public convenience and advantage to be made as regards a third such association—namely that of defendants. * * *

"Plaintiffs and many other associations and lending and fiscal agencies and concerns fully and amply serve the area involved, and while they have at all times been ready, willing and able to open any branches, agencies or sub-offices which might be of convenience to the public, the Commissioner has discouraged them in this, and in fact has disputed the right of Brazosport Savings and Loan Association to open a facility at Lake Jackson or elsewhere in the county, following which action he has nevertheless elected to charter the defendant association, which plaintiffs say is arbitrary and unreasonable conduct as regards them.

"(5) The population of the neighborhood of Lake Jackson and in the sur-

---

[1] "2.1 When articles of incorporation of a new association are presented to the Banking Commissioner for his approval, such articles shall be accompanied by the proposed By-Laws of the association and statements, exhibits, maps and other data, properly verified, which shall be sufficiently detailed and comprehensive to enable the Commissioner to pass upon the proposed charter as to (1) the character, responsibility and general fitness of the persons named in the articles; (2) whether the public convenience and advantage will be promoted by allowing such proposed association to be incorporated and engage in business, taking into consideration (a) that in-

surance of the accounts of the proposed association has been applied for and that such insurance will probably not be refused by the Federal Savings and Loan Insurance Corporation, (b) that such proposed association will have and maintain independent quarters with a ground-floor location or its equivalent, (c) that such proposed association will have qualified, full-time management, and (d) the adequacy of the initial capital and surplus of the proposed association; and (3) whether the population of the neighborhood of such place and in the surrounding country affords a reasonable promise of adequate support for the proposed association."

rounding country does not and cannot afford a reasonable promise of adequate support for the proposed association. In no other comparable area in the state is the population served by so many savings and loan, mortgage and fiscal concerns. The number of associations on a per capita basis is not only already greater in this area than elsewhere, but the facts are that the population is decreasing. In this connection the Commissioner has necessarily acted without knowing whether the population in this area affords a reasonable promise of adequate support for the defendant association, because he has acted to grant this charter to defendants at a time when three other associations in the county had already been so recently chartered that the force and effect of their support by the population in the area, not yet being known or reasonably ascertainable, makes it impossible to reach a rational favorable determination in behalf of defendants as to this element.

"(6) All credible evidence was and is that existing associations needed any and all business which they could obtain, and were ready, willing and able to serve the area proposed to be served by defendants, and were serving such area; further, the credible evidence was to the effect that the chartering of this association would prejudice and harm other newly created associations, with resulting injury to the public.

"(7) Not only is there no need for the proposed association, but in truth, existing associations furnish all services necessary for the area, and, because of decreases in population, local economic conditions and the keen competition existing in the area, existing associations are in need of deposits

and additional business in the area to maintain their own stability; the Commissioner's action was taken without regard to these facts, and contrary to the public welfare."

I agree with the majority that Art. 881a–3, V.A.C.S., does not authorize appellants to appeal from the action of the Banking Commissioner in approving the articles of incorporation of American Savings and Loan Association. This article provides recourse against the arbitrary action of the Banking Commissioner to those who desire to enter this business field but ignores the rights of those already in the field to protection against such arbitrary action.

I also agree with the majority and the Banking Commissioner when they say that appellants do not have a vested property right in the charter and certificate granted by the Commissioner to appellee American Savings and Loan Association. They claim no such right. The rights which they do claim and which they seek to protect are in their own corporate beings. These and their franchises are vested property rights. Lindsley v. Dallas Consol. St. Ry. Co., Tex. Civ.App., Dallas, 200 S.W. 207; City of Atlanta v. First Federal Sav. & Loan Ass'n, 209 Ga. 517, 74 S.E.2d 243.[2]

I recognize and fully approve of our constitutional antipathy towards monopolies. Art. 1, Sec. 26, Texas Constitution. If appellants were ordinary business corporations they would not be properly entitled to receive legislative protection against competition. 43 Am.Jur. p. 585. They are, however, "quasi public financial institutions," and "like banks, trust companies, insurance companies, and railroads are quasi public corporations as to which the state may exercise its police power and may assert its sovereign rights of regulation and

2. The Banking Commissioner unequivocally states that " . . . the right and privilege of American (appellee American Savings and Loan Association) to operate as a building and loan association is a vested property right . . ." Certainly if American's right to operate is a vested property right the rights which appellants seek to protect here are of the same nature.

control in the preservation and furtherance of public well-being." State ex rel. Wagner v. Farm & Home Savings & Loan Ass'n, 338 Mo. 313, 90 S.W.2d 93, 96. See also 9 Am.Jur. p. 100; Hopkins Federal Savings & Loan Ass'n v. Cleary, 296 U.S. 315, 316, 56 S.Ct. 235, 80 L.Ed. 251; Treigle v. Acme Homestead Association, 297 U.S. 189, 56 S.Ct. 408, 80 L.Ed. 575; Veix v. Sixth Ward Bldg. & Loan Ass'n of Newark, 310 U.S. 32, 60 S.Ct. 792, 84 L.Ed. 1061, 1065.

Of necessity Texas recognizes this nature of a building and loan association because one may only be created upon a proper showing of "public convenience and advantage." Art. 881a–2.

This simply means that too many of these institutions, just as too many buses on the highways, are inimical to the public welfare.

Do appellants have no right to seek judicial relief in order to protect their vested property rights merely because the Legislature has not provided that they may seek it?

The courts affirm this right. English Freight Co. v. Knox, Tex.Civ.App., Austin, 180 S.W.2d 633, writ ref. w. m.; Fire Department of City of Fort Worth v. City of Fort Worth, 147 Tex. 505, 217 S.W.2d 664; City of Amarillo v. Hancock, 150 Tex. 231, 239 S.W.2d 788; Board of Insurance Com'rs v. Title Ins. Ass'n, 153 Tex. 574, 272 S.W.2d 95, 97.

In the case last cited the court stated: "The property rights of parties cannot be determined by orders of an administrative agency, without a right of judicial review of such orders."

Should appellants be denied access to the courts merely because the appellee institution is a body corporate?

The Banking Commissioner citing State v. Dyer, 145 Tex. 586, 200 S.W.2d 813; Art. IV, Sec. 22, Texas Constitution, and other authorities so contends. The Dyer case holds that there is a valid distinction between the cessation of a corporation doing business and dissolution of its charter and states that the power to compel the latter belongs exclusively to the State. A corporation was there held liable for franchise taxes even though the Secretary of State had forfeited its right to do business and the corporation had been placed in the hands of a receiver.

The primary objective sought by appellants in this case is the protection of their businesses against unlawful competition. This, in my opinion, it has the right to obtain upon establishing arbitrary action by the Banking Commissioner in approving the articles of incorporation of appellee American in violation of the provisions of Art. 881a–2, supra, under the opinion of the Supreme Court in the previously cited Title Ins. Ass'n case. That case affirmed the opinion of this Court found in 264 S.W.2d 129.

The following is from the Supreme Court opinion [153 Tex. 574, 272 S.W.2d 96]:

"The respondents, Title Insurance Association of Texas and numerous title insurance and abstract companies, brought this action against the Board of Insurance Commissioners of Texas, hereinafter called the Board, the Southwestern Title and Guaranty Company, and the Austin Title Company, Inc., for an order enjoining the Board from approving an agency contract between the corporate defendants and to enjoin such defendants from illegally transacting a title guaranty business in Travis County. * * *

"There is no provision in the statute for an appeal from an order of the Board approving a contract of the nature of the one under review, but the right of proper parties to subject such an order to judicial review must be implied. The property rights of parties cannot be determined by orders of an administrative agency, without a right of judicial review of such orders. City of Amarillo v. Hancock, 150 Tex. 231,

239 S.W.2d 788; English Freight Co. v. Knox, Tex.Civ.App., 180 S.W.2d 633; White v. Bolner, Tex.Civ.App., 223 S.W.2d 686, error refused.

"It is argued that respondents have no right to prevent competition in their business. That would be a correct proposition in the transaction of ordinary business enterprises if the competition is not illegal, but, as well stated in the opinion of the Court of Civil Appeals * * *:

" 'The business of title insurance is one affected by public use, is of public interest and is subject to reasonable legislative control. Daniel v. Tyrrell & Garth Inv. Co., 127 Tex. 213, 93 S.W.2d 372.' "

I revert now to the Court of Civil Appeals' opinion because it more fully discusses the authorities approved by the Supreme Court in its opinion and quote [264 S.W.2d 131]:

"This then relegates us to general law to determine whether or not appellants have a justiciable interest sufficient to maintain their suit against the corporate appellees. * * *

"We consider the case of Featherstone v. Independent Service Station Ass'n of Texas, Tex.Civ.App., 10 S.W. 2d 124, 128, also by the Dallas Court, to be based upon sounder reasoning and more solid authority than the two cases above noted. In that case the Court reversed the trial court and granted an injunction enjoining a competitor of plaintiff (service stations) from enticing away his customers through the use of a lottery, the Court saying:

" 'We are of the opinion that plaintiff's business and his right to conduct the same constitute property that a court of equity will protect from unlawful interference or injury. The correctness of this proposition has been announced so often and by so many courts that it ought not now to be con- sidered an open question. While it is true a dealer has no such interest in the future trade, that is, in possible customers, as would justify an appeal to a court of equity, to restrain a competitor from doing what is perfectly legal, to advertise and attract customers to his own business, although such conduct may result in a corresponding loss to one engaged in a similar business, yet a competitor may ask for the restraint of acts and conduct prohibited by law, that unreasonably interfere with, divert patrons from, and injure his business.'

\* \* \* \* \* \*

"We believe the case of Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 237, 73 L.Ed. 483, to present a close analogy. In that case the Court was considering an Oklahoma statute which declared cotton gins to be a public utility and required a showing of public necessity in order to obtain an operating permit, 47 U.S.1951, Sec. 41 et seq. The State Corporation Commission granted a permit for a gin in Durant without regard to public necessity and a Durant operator of another gin, under proper permit, sued to enjoin operation of the gin under the illegal permit. The Court in holding that the injunction should have been granted said, in part:

" 'Appellant, having complied with all the provisions of the statute, acquired a right to operate a gin in the city of Durant by valid grant from the state acting through the corporation commission. While the right thus acquired does not preclude the state from making similar valid grants to others, it is, nevertheless, exclusive against any person attempting to operate a gin without obtaining a permit or, what amounts to the same thing, against one who attempts to do so under a void permit; in either of which event the owner may resort to a court of equity to restrain the illegal opera-

tion upon the ground that such operation is an injurious invasion of his property rights. * * *

" 'The injury threatened by such an invasion is the impairment of the owner's business, for which there is no adequate remedy at law.'

" * * * the Legislature has provided that a title company representative in a county must own and operate an abstract plant in such county. Any representative lacking this qualification is an illegal representative and any permit authorizing such illegal representative to act for his principal and to divide premiums is invalid and operation thereunder is, in our opinion, an unlawful invasion of a competitor's property rights. Frost, supra.

"We believe appellants are entitled to an opportunity to prove their allegations and to appropriate relief if they are proved."

The Legislature having provided that a building and loan association should not be incorporated unless it shows that the public convenience and advantage will be thereby promoted I believe that if the Banking Commissioner arbitrarily violates this legislative command and approves a charter for such association and authorizes it to engage in such business then the conduct of such business is an unlawful invasion of appellants' (competitors') property rights. In such cases the courts are open to the aggrieved parties for, as stated by Associate Justice Simpson in Fire Department of City of Fort Worth v. City of Fort Worth, supra [147 Tex. 505, 217 S.W.2d 666]:

"An administrative agency, though vested with discretion in its acts, must not exercise its powers arbitrarily or capriciously, and the reasonableness of its orders is, and under our system of government must be, subject to judicial review."

I respectfully dissent.